Edwin MILLER and Donna Miller, Executors for Douglas Miller, Deceased, Plaintiffs–Appellants,

v.

UNITED STATES, Defendant–Appellee.

No. 79–1964.

United States Court of Appeals, Eighth Circuit.

Submitted April 18, 1980.

Decided Aug. 28, 1980.

On Rehearing En Banc March 18, 1981.

William O. Green (argued), Memphis, Mo., and Bruce Colyer, Bloomfield, Iowa, on brief, for plaintiffs–appellants.

Joseph B. Moore, Asst. U. S. Atty. (argued), and Robert D. Kingsland, U. S. Atty. St. Louis, Mo., on brief, for defendant–appellee.

Before HEANEY and ARNOLD, Circuit Judges, and WRIGHT,* District Judge.

SCOTT O. WRIGHT, District Judge.

This is an appeal from the final order of the district court, 478 F.Supp. 989, granting defendant's motion for summary judgment. Plaintiffs brought this action in the district court pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671 et seq., to recover damages caused by the alleged negligence of the defendant which

* The Hon. SCOTT O. WRIGHT, United States District Judge for the Western District of Missouri, sitting by designation.

resulted in the death of the plaintiffs' son, Douglas B. Miller.

Douglas Miller was a Private First Class on active duty in the United States Army, assigned to the 47th Engineer Company at Fort Wainwright, Alaska. On June 23, 1977, after completing his normal military duties and with the knowledge and permission of his superior officer, PFC Miller reported to a part–time job which he held in a civilian capacity. He was employed during his off–duty hours by George Rodman, a civilian subcontractor, to erect scaffolds on government–owned family quarters. While so employed, PFC Miller was electrocuted when an aluminum ladder he was holding came into contact with a main electrical power line.

The district court granted defendant's motion for summary judgment on the grounds that plaintiffs' claim was barred by the doctrine set forth in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). The *Feres* doctrine bars suits against the government brought by members of the military for injuries which arose out of activities incident to military service. Plaintiffs contend, and this Court agrees, that PFC Miller's death arose out of activities that were not related to or dependent upon military service, and, therefore, *Feres* does not apply.

The Federal Tort Claims Act, passed in 1948, waived governmental tort immunity for injuries negligently caused by government employees acting within the scope of their employment where the United States, if a private person, would be liable under the law of the place where the act or omission occurred. Section 2671 provides that members of the military or naval forces are deemed to be employees of the government. Section 2680 lists twelve specific exceptions to the Federal Tort Claims Act. None completely bars the right of servicemen and women to sue the government. Only one of the twelve exceptions directly relate to the military. Section 2680(j) exempts the government from liability on any claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war. The government is also immune from liability under Section 2680(k) for any claim arising in a foreign country. Under general rules of statutory construction, the Federal Tort Claims Act could easily be interpreted to allow suits against the government by servicemen and women for all torts except those exempted under Section 2680. The Act does not provide for the exclusion of claims which arise out of activities "incident to military service." Nevertheless, the exclusion was judicially created and is strictly followed.

After passage of the Act in 1948, the government argued that *all* tort claims of military personnel should be barred under the Act. This argument was soundly rejected by the Supreme Court in *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949). *Brooks* involved two soldiers who were off the military base and on furlough when their civilian vehicle was struck by an Army truck. One soldier was killed and the other badly injured. After a judgment in favor of the plaintiffs was reversed by the Court of Appeals for the Fourth Circuit, the United States Supreme Court granted certiorari and reinstated the trial court's decision, holding that military personnel had the right to sue the United States for tortious acts under the Federal Tort Claims Act. But the Court qualified its holding by stating that if the accident were "incident to service" a different case would be presented. *Id.* at 52, 69 S.Ct. at 920.

One year later, this different case was presented in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and the Supreme Court created what is now widely known as the *Feres* doctrine. *Feres* was a consolidation of three claims, *Feres v. United States, Jefferson v. United States,* and *United States v. Griggs.* *Feres* involved a serviceman who died as a result of fire when his barracks burned while he was asleep. *Jefferson* and *Griggs* involved servicemen who were injured as a result of alleged negligence of Army doctors. The Supreme Court held in all three instances

that the injury or death arose out of or were in the course of activity incident to military service, and all three claims were barred.

The Court reached this conclusion on the basis of several factors.[1] First, the relationship between the government and members of its military is "distinctively federal in character" and has traditionally been governed by federal law rather than local law. 340 U.S. at 143, 71 S.Ct. at 158, citing *United States v. Standard Oil Company*, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947). Because the FTCA relies upon the law of the place where the act or omission occurred, the Court felt that the fortuitous circumstances of where a serviceman was stationed should not control the government's liability. Second, Congress has established a comprehensive system of relief available to injured servicemen and women and their dependents under the Veterans' Benefits Act, which provides a statutory "no fault" compensation scheme. A third factor was clarified in *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). Interpreting the *Feres* rationale, the *Brown* court placed emphasis on

> [t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on disci-

pline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty . . . .

348 U.S. at 112, 75 S.Ct. at 143. Subsequent Supreme Court opinions have weakened the importance of the first two factors,[2] and it appears that the third factor is the most widely used basis for applying the *Feres* doctrine.[3] However, the rationale behind *Feres* only justifies applying *Feres* to service–connected injuries. As discussed below, the death of the plaintiffs' son in this instance was not service–connected, and, therefore, *Feres* does not apply.

Deciding whether to apply *Feres* or *Brooks* in any given situation is not an easy task. Defining "incident to service" is the key, but the Supreme Court has never fully defined the term.[4] As a result, the lower courts have developed guidelines for determining whether an activity is incident to service. Generally, the *Feres* doctrine applies if the incident occurs (1) on a military base, *or* (2) while the serviceman is on active duty status,[5] *or* (3) under compulsion of military orders or on a military mission or directly subject to military control, *or* (4) the activity is a privilege related to or dependent upon military status.[6] The *Brooks*

1. *See generally, Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977); 1 L. Jayson, Handling Federal Tort Claims § 155.05 (1964), (hereinafter "Jayson").

2. *Rayonier, Inc. v. United States*, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957); *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). *But see, Stencel Aero Engineering Corp. v. United States, supra* note 1 (Court reached its decision after analysis of all the factors of the rationale behind *Feres*).

3. *United States v. Muniz*, 374 U.S. 150 at 162, 83 S.Ct. 1850 at 1858, 10 L.Ed.2d 805 (1963); *United States v. Brown, supra* note 2; *United States v. Carroll*, 369 F.2d 618 (8th Cir. 1966).

4. *Hale v. United States*, 416 F.2d 355 (6th Cir. 1969), *on remand*, 334 F.Supp. 566 (M.D.Tenn. 1970), *aff'd*, 452 F.2d 668 (6th Cir. 1971).

5. The term "active duty status" encompasses more than just the time during on–duty hours.

It includes off–duty hours, and time spent on liberty or pass, although a few courts have applied *Brooks* when the serviceman was on pass. *See, e. g., Hand v. United States*, 260 F.Supp. 38 (M.D.Ga.1966).

6. *E. g., Stencel Aero Engineering Corp. v. United States, supra* note 1; *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *Stansberry v. Middendorf*, 567 F.2d 617 (4th Cir. 1978); *Thomason v. Sanchez*, 539 F.2d 955, 957 (3rd Cir. 1976), *cert. denied*, 429 U.S. 1072, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977); *Camassar v. United States*, 531 F.2d 1149 (2nd Cir. 1976), *aff'g* 400 F.Supp. 894 (D.Conn.1975); *Hass, United States v. United States*, 518 F.2d 1138 (4th Cir. 1975); *Shults v. United States*, 421 F.2d 170 (5th Cir. 1969); *United States v. Carroll, supra* note 3; *Chambers v. United States*, 357 F.2d 224 (8th Cir. 1966); *Knoch v. United States*, 316 F.2d 532 (9th Cir. 1963); *Buer v. United States*, 241 F.2d 3 (7th Cir. 1956), *cert. denied*, 353 U.S. 974, 77 S.Ct. 1059, 1 L.Ed.2d 1136 (1957); *Orken v. United States*, 239 F.2d 850 (6th Cir. 1956); *O'Brien v. United States*,

doctrine is the converse of the *Feres* doctrine and applies if the accident occurs while the serviceman is (1) off the military base, *and* (2) on leave or furlough, *and* (3) not under compulsion of military orders or on a military mission or directly subject to military control, *and* (4) the activity is not a privilege dependent upon military status.[7]

The use of the conjunctions "and" and "or" in the two tests is pertinent. Under the *Feres* rule, any one factor has been sufficient to bar the claim but under the *Brooks* rule, it has generally been necessary to find that all the factors are present before a serviceman can proceed with his claim.[8] This test is understandable for the third and fourth factors because if either factor is present, the activity is necessarily incident to military service. But, blind application of this test for the first two factors is of questionable validity and represents only the most superficial analysis.

The facts of each case must be carefully analyzed, and the first two factors should be considerations only, not determinative factors.

Nevertheless, the majority of decided cases indicate that if he is either on active duty status or on base, *Feres* automatically applies,[9] and if he is not on active duty status and off base, *Feres* may or may not apply, depending upon what he is doing at the time of injury.[10] If either factor is present, an irrebuttable presumption is raised that the injury arose out of activities incident to military service. The rationale is that if he is on active duty status or on the base, he is presumably subject to military control. He can be recalled for duty at any time and is subject to the possibility of immediate orders. *Chambers v. United States*, 357 F.2d 224 (8th Cir. 1966); *Zoula v. United States*, 217 F.2d 81 (5th Cir. 1954); *Mariano v. United States*, 444 F.Supp. 316

192 F.2d 948 (8th Cir. 1951); *Herreman v. United States*, 332 F.Supp. 763, 766 (E.D.Wis.1971), aff'd, 476 F.2d 234 (7th Cir. 1973). *See generally*, JAYSON, § 155.08.

**7.** *E. g., Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949); *Mills v. Tucker*, 499 F.2d 866 (9th Cir. 1974); *Knecht v. United States*, 144 F.Supp. 786 (E.D.Pa.1956), aff'd, 242 F.2d 929 (3rd Cir. 1957); *Barnes v. United States*, 103 F.Supp. 51 (W.D.Ky.1952); *see generally*, JAYSON, § 155.07. *But see, Hand v. United States*, 260 F.Supp. 38 (M.D.Ga. 1966) (applied *Brooks* even though injury occurred on military base).

**8.** *See generally*, cases cited *supra* notes 6 and 7.

**9.** *Chambers v. United States*, 357 F.2d 224 (8th Cir. 1966) (claim barred under *Feres* because of claimant's active duty status and presence on base, even though engaged in off–duty recreation); *Knoch v. United States*, 316 F.2d 532 (9th Cir. 1963) (malpractice claim barred under *Feres* even though claimant was on active duty status for purposes of physical examination only); *Mariano v. United States*, 444 F.Supp. 316 (E.D.Va.1977), aff'd, 605 F.2d 721 (4th Cir. 1979) (claim barred under *Feres* because of claimant's active duty status and presence on base even though injury occurred during off–duty hours); *Frazier v. United States*, 372 F.Supp. 208 (M.D.Fla.1973) (during normal duty hours, claimant was injured while on personal business by a nonmilitary government employee; claim barred because it is the status

of the claimant, not the status of the tortfeasor, which controls).

**10.** [E]ven if a soldier is on leave or off duty, alternatively (1) if the soldier is injured taking advantage of military privileges generally restricted to the military and not generally permitted civilians, or (2) if the soldier is injured while under military jurisdiction, then . . . he will be barred from suing the Government.

*Herreman v. United States*, 332 F.Supp. 763 at 766 (E.D.Wis.1971). *See also, Shults v. United States*, 421 F.2d 170 (5th Cir. 1969) (serviceman was injured while on leave and he was brought to naval hospital where he died of alleged malpractice; held: administrator's claim was barred because deceased would not have been in a military hospital but for his military status); *Buer v. United States*, 241 F.2d 3 (7th Cir. 1956), cert. denied, 353 U.S. 974, 77 S.Ct. 1059, 1 L.Ed.2d 1136 (1957); *Zoula v. United States*, 217 F.2d 81 (5th Cir. 1954) (claimants had passes, were in civilian clothes and on personal business when injury occurred on base; held: claims were barred under *Feres* because claimants were under military jurisdiction); *Archer v. United States*, 217 F.2d 548 (9th Cir. 1954), cert. denied, 348 U.S. 953, 75 S.Ct. 441, 99 L.Ed. 745 (1955) (serviceman was on leave but "hitched" a ride on a military plane which crashed; held: *Feres* barred suit because claimant was subject to military discipline); *O'Brien v. United States*, 192 F.2d 948 (8th Cir. 1951); *Homlitas v. United States*, 202 F.Supp. 520 (D.Ore.1962).

(E.D.Va.1977), *aff'd*, 605 F.2d 721 (4th Cir. 1979). Theoretically, his off–duty time is not his own. But, this reasoning broadens the scope of the test needlessly, because almost all of the cases could have been decided on narrower grounds.[11]

For example, a decision by this Court stressed the importance of the serviceman's active duty status and presence on base when the injury occurred, but this decision could have been restricted to a narrower holding. In *Chambers v. United States*, 357 F.2d 224 (8th Cir. 1966), the plaintiffs brought an action against the United States under the Federal Tort Claims Act seeking damages for the death of their son, Airman Third Class John G. Chambers. The decedent had drowned in a base swimming pool during his off–duty hours. This Court held that *Feres* applied and barred the claims, stating

> [t]he significant fact here is that Chambers was assigned to duty at the White-man Base, subject to the control of his military superiors. Even though he might have had a furlough order in his pocket or might have been engaged in swimming for recreation, his claim would be subject to the *Feres* rule and no recovery permitted.

357 F.2d at 229.

The language of the opinion indicates that the mere fact of being on active duty status and on base, thereby being subject to ultimate military control, is sufficient to bar the claim under *Feres*. However, the Court further stated that "[a]s a matter fact, Airman Chambers' use of the pool, which was a part of the base, was related to and dependent upon his military service; otherwise, he would not have been privileged to use it." 357 F.2d at 229. This reasoning represents a much narrower holding, but also a much more logical one. The injury arose out of activities incident to service because the decedent would not have been privileged to use the pool but for his military status.

The holding in *Chambers* was further clarified in *Alexander v. United lStates*, 500 F.2d 1 (8th Cir. 1974), *cert.denied*, 419 U.S. 1107, 95 S.Ct. 779, 42 L.Ed.2d 803 (1975). In *Alexander, Chambers* was interpreted to hold "that as long as the serviceman was engaged in an activity 'related to and dependent upon his military service' while 'subject to military control,' any consequent injury would be 'incident to service.' " 500 F.2d at 5, quoting from *Chambers v. United States*, 357 F.2d at 229 and note 4. The Court's interpretation of *Chambers* in *Alexander* properly puts the emphasis on what he is doing at the time of injury instead of on where he is or what his status is.

It is understandable why so many courts have overemphasized the fact that the serviceman is on base or on active duty status. The military is more than just a career or a job; it is a way of life. It permeates every aspect of a serviceman's daily routine—his livelihood, living arrangements, meals, recreation, personal property, travel, medical care, etc. Therefore, if he is on base or on active duty status, a strong presumption is raised that the injury arose out of activities incident to military service, just as the opposite presumption is raised when he is off base and on pass, leave, or furlough. The courts carefully scrutinize the facts in the second situation to determine whether the serviceman was engaged in an activity incident to service,[12] and the same consideration should be given to the facts in the first situation. Neither presumption should be irrebuttable.

Of course, some may argue that mechanical application of the *Feres* doctrine has the "virtue of simplicity," while a test such as this Court proposes would involve difficult

---

11. A few of the cited cases cannot be harmonized with the reasoning of this opinion. *See, Thomason v. Sanchez, supra* note 6; *Camassar v. United States, supra* note 6; *Zoula v. United States, supra* note 10; *Frazier v. United States, supra* note 9. These decisions were decided solely on the basis of the claimants' active duty status or presence on base. If these decisions had been based upon an in–depth analysis of whether the activities involved were "incident to service", different results would have been reached.

12. *See generally*, cases cited *supra* note 10.

questions of fact. *Hass, United States v. United States*, 518 F.2d 1138, 1141 (4th Cir. 1975). Although economy of judicial time is a meritorious goal, it is hardly a commendable reason for denying a grievant redress in the courts. If the injury arose out of activities incident to service, the rationale behind *Feres* justifies barring the suit. But, if the injury arose out of activities that were *not* incident to service, there is no justification for barring a serviceman from maintaining a suit that a civilian would be entitled to bring, and it is doubtful that such a practice would withstand a due process challenge. The only way to determine whether an activity is truly incident to service is to decide difficult questions of fact.

Careful analysis of each fact situation to determine whether the injury actually arose out of activities incident to service will not seriously undermine military discipline and authority as so many courts fear. In fact, most claims for injuries likely to be sustained by military personnel would be barred by the *Feres* rule. Suits for injuries incurred in combat, of course, are specifically excepted under the Act in Section 2680(j). Suits for injuries incurred while following orders, or during a military mission, or in the course of duty are barred because the injury would clearly arise out of activities incident to military service. Many of the decided cases involve several recurring fact situations which would also be barred by *Feres*. One of the most common fact situations is when a serviceman is injured as a result of negligence of military physicians or military hospital personnel.[13]

A second recurring fact situation is when a serviceman is injured while riding on a military vehicle in a nonmilitary capacity pursuant to a privilege to ride free on a stand-by basis.[14] A third situation is where the serviceman is injured while using military recreational facilities.[15] In all three instances, the serviceman is taking advantage of a privilege permitted because of his military status, and the activity is, therefore, incident to military service, and the suit would be barred. Even the simple activity of sleeping in the barracks[16] would be incident to service because civilians are generally not permitted to sleep in military barracks or housing. Almost every aspect of a serviceman's life is incident to service, and most claims for injuries sustained by servicemen would be barred by *Feres*. However, as *Brooks* and its progeny show, situations do arise where a serviceman is injured while engaged in an activity not incident to service due to the negligence of a government employee. The *Brooks* rationale should not be limited to those cases where the serviceman is on leave or furlough, but should also be applied in cases where the serviceman is on active duty status but engaged in an activity that is really not related to or dependent upon his military career. The facts of this case provide a perfect example of a situation where justice demands application of *Brooks*, but where traditional legal principles dictate application of *Feres*.

PFC Miller was off duty, working in a civilian capacity at a part-time job for a private contractor.[17] He was not perform-

13.  *Stansberry v. Middendorf, supra* note 6; *Alexander v. United States*, 500 F.2d 1 (8th Cir. 1974); *Shults v. United States, supra* notes 6 and 10; *Knoch v. United States, supra* notes 6 and 9; *Buer v. United States, supra* notes 6 and 10.

14.  *United States v. Carroll, supra* note 6; *Archer v. United States, supra* note 10; *O'Brien v. United States, supra* notes 6 and 10; *Herreman v. United States, supra* notes 6 and 10; *Homlitas v. United States, supra* note 10.

15.  *Hass, United States v. United States, supra* note 6; *Chambers v. United States, supra* note 9; *Mariano v. United States, supra* note 9.

16.  *Feres v. United States, supra,* note 6; *Orken v. United States, supra* note 6.

17.  A similar fact situation existed in *Mariano v. United States, supra* note 9. The claimant was employed in a civilian capacity during his off-duty hours as a night manager at the Tradewinds Club, a recreational facility owned and operated by the United States for enlisted personnel. Claimant was injured while attempting to stop a disturbance at the Club. The district court held that his claim was barred by *Feres*, and this decision was affirmed on appeal. Although *Mariano* is factually similar to this case, it can easily be distinguished. In *Mariano*, the claimant was responsible for maintaining order

ing any military duties or complying with any orders, nor was he taking advantage of a military privilege. This work was not something that a serviceman would ordinarily do while off duty. Even though he was on active duty and on a military base, he was exactly in the same position as any civilian employee of the private contractor might have been at that time and place.

PFC Miller had permission from his superior officers to work the part-time job. The Army "loaned" him out to a private contractor and, for all practical purposes, temporarily released their jurisdiction and control over him. At the time of the injury, the decedent was subject to the control and authority of his civilian employer—not his military superiors. The government takes a risk when it permits the members of the military to engage in outside activities totally unrelated to military life. If the government chooses to "loan" out the members of its military to civilian government employees,[18] it must bear the risk of liability for resulting injuries. PFC Miller's death did not arise out of activities incident to service, and, therefore, the facts of the case do not fall within the rationale of *Feres*. Summary judgment entered in favor of defendant by the district court was inappropriate, and the judgment is reversed. The cause is remanded to the district court for further proceedings.

ARNOLD, Circuit Judge, dissenting.

The facts of this case are simple and undisputed in any material respect. PFC Douglas Miller was on active duty at the time of his death. He was working on government-owned family quarters located on the post at Fort Wainwright, Alaska, at which he was stationed. According to plaintiffs (Br. for Appellants 8), Private

Miller was doing this work with the knowledge and permission of his superior officers. He "could have been called to perform duties at any time," including the time while he was doing the work in the course of which he was injured. Affidavit of Sergeant First Class Frank D. Seibold, ¶ 3, Designated Record (hereinafter cited as R.) 13. He was "not on leave or on pass," Affidavit of Staff Sergeant John H. Williams, ¶ 4, R. 16.[1]

Plaintiffs claim, Complaint ¶ 7, R. 2, that Private Miller's death occurred when an aluminum ladder with which he was working came in contact with an uninsulated electric wire owned and controlled by the Department of the Army. They allege a number of particulars in which the United States (presumably acting through Miller's commanding officer) was negligent, Complaint ¶ 9, R. 2, including, for example, the failure to de-energize the electric line in question.

In my view, this case falls squarely within the doctrine of *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). There, the Supreme Court held, without dissent, that no action would lie under the Federal Tort Claims Act where the "claimant, while on active duty and not on furlough, sustained injury due to negligence of others in the armed forces," 340 U.S. at 138, 71 S.Ct. at 155. In *Feres*, the plaintiff's decedent had died when the barracks in which he was sleeping, "while on active duty," *id.* at 137, 71 S.Ct. at 155, were destroyed by fire. The Supreme Court explained:

> We know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers or the Government he is serving.

in the Club pursuant to instructions issued or approved by the Commanding Officer, and all military personnel, whether patrons or employees, were subject to discipline under the Uniform Code of Military Justice for their conduct in the Club. The fact that he was subject to direct military control changes the complexion of the activity the claimant was engaged in and makes application of the *Feres* doctrine appropriate.

18. The issue of whether the private contractor was an independent contractor or a government employee is not properly before this Court and is an issue of fact to be decided at the district court level.

1. Plaintiffs filed two counter-affidavits below, neither of which contradicts the quoted portions of the Seibold and Williams affidavits.

*Id.* at 141, 71 S.Ct. at 157 (footnote omitted). The Court summarized its holding as follows:

> We conclude that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service.

*Id.* at 146, 71 S.Ct. at 159.

The Court implies that later cases may have narrowed the basis for *Feres* or weakened its rationale. I cannot agree. In the most recent Supreme Court case on the subject, the *Feres* doctrine was extended to prevent the maintenance of a third–party action for indemnity or contribution against the United States by a company that had been compelled to pay out damages to a serviceman. *Stencel Aero Eng'r Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977). The Supreme Court summarized *Feres* as follows:

> In *Feres v. United States, supra*, the Court held that an on–duty serviceman who is injured due to the negligence of Government officials may not recover against the United States under the Federal Tort Claims Act.

*Id.* at 669, 97 S.Ct. at 2057. The two dissenting justices agreed with this interpretation of the Court's opinion:

> The opinion of the Court appears to be premised on the theory that in any case involving a member of the military on active duty, *Feres* . . . displaces the plain language of the Tort Claims Act.

*Id.* at 674, 97 S.Ct. at 2059 (Marshall, J., dissenting).[2]

The case most clearly in point in this Court is *Chambers v. United States*, 357 F.2d 224 (8th Cir. 1966). The plaintiff's decedent had drowned while swimming in a pool located on base. He was not on furlough. The action was held to be barred.

The Court explained that decedent was "subject to the command of the base authorities," 357 F.2d at 226, and that he "was present and accounted for on the day of his death," *ibid*. "The significant fact here is that Chambers was assigned to duty at the Whiteman base, subject to the control of his military superiors." *Id.* at 229. The action is barred "even though at the time [the claimant] . . . is not engaged in the performance of military duties." *Id.* at 227 (footnote omitted).

The following passage from the *Chambers* opinion shows beyond doubt the basis of our decision there:

> In *Zoula v. United States*, 217 F.2d 81 (5th Cir. 1954), servicemen were injured in a collision between the automobile they occupied and an Army ambulance. The servicemen had passes but recovery under the Federal Tort Claims Act was denied them.
>
> > "At the time of the collision resulting in the injuries sued for, both the Plaintiffs were dressed in civilian clothes, were on business of their own, going from one part of the Reservation to the other, for the purpose of getting a check cashed, a hair–cut, making measurements for some clothes, probably spending the week end [sic] in town."
> >
> > *Id.* at 82 n.1.[4]

> [4] The servicemen there had passes issued to them and since the injury happened on the base and while they were thus subject to military control, their activities were "incident to service" within the meaning of the *Feres* rule.

I do not read *Alexander v. United States*, 500 F.2d 1 (8th Cir. 1974), *cert. denied*, 419 U.S. 1107, 95 S.Ct. 779, 42 L.Ed.2d 803 (1975), to narrow the rationale of *Chambers*. *Alexander* extended *Feres* to bar a Federal Tort Claims action by a member of the Public Health Service, and held, in addition, that elective surgery at a military hospital is "incident to service" as *Feres* uses that phrase. The *Alexander* opinion

---

2. *Stencel Aero* affirmed a judgment of this Court, 536 F.2d 765 (8th Cir. 1976), which in turn affirmed a judgment of the United States District Court for the Eastern District of Missouri, *Donham v. United States*, 395 F.Supp. 52 (E.D.Mo.1975). This Court's opinion took a broad view of the *Feres* bar to actions by service people. In doing so, it affirmed a judgment entered by the Hon. John F. Nangle, the United States District Judge who sat below in the instant case.

emphasizes, among other factors, that the plaintiff, even while in the hospital, was subject to recall by his Public Health Service superiors. The Court also observed, citing, among other cases, *Chambers*, that "this court has, in the past, given a broad reading to the phrase, 'incident to service.'" 500 F.2d at 5. And, on the same page of the opinion, the *Alexander* court refers to "the expansive view this court expressed in *Chambers* . . . ." *Ibid.*

The Court's opinion appears to recognize the force of these precedents. It says, for example, that *Chambers* "stressed the importance of the serviceman's active duty status and presence on base when the injury occurred . . . ." *Ante*, p. 485. The Court further concedes that "the majority of decided cases indicate that if [a claimant] . . . is either on active duty status or on base, *Feres* automatically applies," *ante*, at 484, and that a "few of the cited cases cannot be harmonized with the reasoning of this opinion." *Ante*, at 485 n.11. Significantly one of the "cited cases" that "cannot be harmonized with the reasoning of this opinion" is *Zoula v. United States*, 217 F.2d 81 (5th Cir. 1954), which this Court cited and quoted with approval in *Chambers, supra*, 357 F.2d at 229, in a passage I have already quoted.

The Court attempts to avoid the force of these precedents by arguing that *Chambers* and other cases could have been decided on narrower grounds. In *Chambers*, for example, it is said, the deceased serviceman could never have used the swimming pool had it not been for his military status. I doubt that the result in *Chambers* would have been any different if it could have been shown that the military authorities there permitted some civilians to use their swimming pool. The real point, however, is that this Court should not give its own precedents such an ungenerous reception, particularly when they are based upon clear language in opinions of the Supreme Court. It

is often possible, after the fact, to suggest narrower or different rationales that might have sufficed to produce the results of prior cases. Such a technique, if pursued, will soon, destroy much of the utility of the doctrine of *stare decisis*. And this case, after all, comes down to nothing more than a question of statutory interpretation, the kind of question as to which the precedent should be especially weighty, since Congress can easily change the law if it thinks the courts are misunderstanding its will.

The Court ultimately bases it conclusion on "justice," as opposed to "traditional legal principles." *Ante*, at 486. I doubt that the two are incompatible. And if they are, the impulse to decide a case on the basis of "justice" as opposed to "traditional legal principles" is a temptation that judges should usually resist. I feel more comfortable applying "traditional legal principles," leaving to Congress the power to change the statute if it thinks that "justice" requires the change. In addition, I do not see how the result reached by the District Court in this case is any more unfair to the plaintiffs here than this Court was to Airman Chambers, or the Supreme Court to Feres. If sleeping in a barracks or swimming in a base swimming pool are activities incident to service, working on buildings located on a military base and to be used for military–housing purposes is no less so.

In fact, plaintiffs here may actually be in a better position, in terms of the compensation available to them, than the typical serviceman in a *Feres* situation. In addition to whatever compensation may be available from the Army [3], these plaintiffs, as the surviving parents of Private Miller, have some kind of claim, either in tort or for workers' compensation, against Northside–Danzi Construction Company, for which Private Miller was working at the time the accident occurred. According to the affidavit of Bruce E. Colyer, one of the plaintiffs'

---

**3.** It is impossible to say with certainty on the present record what government benefits Private Miller's parents may be entitled to, but apparently they are eligible at least for a death gratuity, usually equal to six months' pay. See

10 U.S.C. §§ 1475(a)(1), 1477(a)(3)(A), 1478(a). The funeral expenses, 10 U.S.C. §§ 1481, 1482, and dependency and indemnity compensation, 38 U.S.C. § 415, may also be available.

attorneys, plaintiffs have instituted suit in the courts of Alaska against Northside–Danzi. The defendant has pleaded the availability of workers' compensation benefits as a defense, and at the time the affidavit was filed, July 27, 1979, the courts of Alaska had not ruled. Even if, as seems likely, the law of Alaska bars the tort action against Northside–Danzi, compensation will surely be available, and the availability of an alternative remedy, not based on fault, was one of the factors underlying the Supreme Court's reasoning in *Feres*.

Because I believe that "traditional legal principles" should govern the outcome of this case, and that "justice" should include the application of decided cases in a way fair to both sides, I respectfully dissent.

Before LAY, Chief Judge, and HEANEY, BRIGHT, ROSS, STEPHENSON, HENLEY, McMILLIAN and ARNOLD, Circuit Judges, *en banc*.

ARNOLD, Circuit Judge.

### On Rehearing En Banc

This is an action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., for wrongful death of the plaintiffs' son, a private first class on active duty with the United States Army. Negligence on the part of the United States was alleged. The District Court,[1] citing *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), granted the defendant's motion for summary judgment. *Miller v. United States*, 478 F.Supp. 989 (E.D.Mo.1979). A panel of this Court, one judge dissenting, reversed. *Miller v. United States*, 643 F.2d 481 (8th Cir. 1980). Rehearing en banc was granted. After hearing oral argument, we now affirm the District Court.

### I. THE FACTS

The accident that caused Private Miller's death occurred on June 23, 1977. On that

1. The Hon. John F. Nangle, United States District Judge for the Eastern District of Missouri.

2. Affidavit of James William Harvey, ¶ 5, Designated Record (D.R.) 36. This affidavit was filed by plaintiffs. According to the Affidavit of First Lt. Thomas W. White, ¶ 11, D.R. 11, filed by defendant, Miller had no such permis-

day and at all relevant times he was a member of the United States Army stationed at Fort Wainwright, Alaska. On June 23 Private Miller was present and accounted for. After normal duty hours, with the knowledge and permission of his superior officers,[2] he was employed for part-time work by one George Rodman, a supervisor for Northside-Danzi Construction Co. The work was done on the post and consisted of putting up scaffolding poles for on-base residential housing. Miller was not on leave or on pass, and could have been called to perform military duties at any time. The work had been going on for some time after normal duty hours each day.

Plaintiffs claim, Complaint ¶ 7, D.R. 2, that Private Miller's death occurred when an aluminum ladder with which he was working came in contact with an uninsulated electric wire owned and controlled by the Department of the Army. They allege a number of particulars in which the United States (presumably acting through Miller's commanding officer) was negligent, Complaint ¶ 9, D.R. 2, including, for example, the failure to de-energize the electric line in question.

### II. THE *FERES* DOCTRINE

In *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court held, without dissent, that no action would lie under the Federal Tort Claims Act where the "claimant, while on active duty and not on furlough, sustained injury due to negligence of others in the armed forces," *id.* at 138, 71 S.Ct. at 155. In *Feres*, the plaintiff's decedent had died when the barracks in which he was sleeping, "while on active duty," *id.* at 137, 71 S.Ct. at 155, were destroyed by fire. The Supreme Court explained:

sion from his company commander. We accept plaintiffs' version of the facts on this point, not only because on motion for summary judgment every reasonable indulgence should be accorded the party opposing the motion, but also because the White affidavit does not appear to be based on personal knowledge.

We know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers or the Government he is serving. *Id.* at 141, 71 S.Ct. at 157 (footnote omitted). The Court summarized its holding as follows:

We conclude that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service.

*Id.* at 146, 71 S.Ct. at 159.

In the most recent Supreme Court case on the subject, the *Feres* doctrine was extended to prevent the maintenance of a third-party action for indemnity or contribution against the United States by a company that had been compelled to pay out damages to a serviceman. *Stencel Aero Eng'r Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977). The Supreme Court summarized *Feres* as follows:

In *Feres v. United States, supra*, the Court held that an on-duty serviceman who is injured due to the negligence of government officials may not recover against the United States under the Federal Tort Claims Act.

*Id.* at 669, 97 S.Ct. at 2057. The two dissenting justices agreed with this interpretation of the Court's opinion:

The opinion of the Court appears to be premised on the theory that in any case involving a member of the military on active duty, *Feres* ... displaces the plain language of the Tort Claims Act.

*Id.* at 674, 97 S.Ct. at 2059 (Marshall, J., dissenting).[3]

This Court has given *Feres* a rather broad construction. *E. g., Donham v. United States*, 536 F.2d 765 (8th Cir. 1976), *aff'd sub nom. Stencel Aero Eng'r Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), just discussed. The case

most closely in point in this jurisdiction is *Chambers v. United States*, 357 F.2d 224 (8th Cir. 1966). The plaintiff's decedent had drowned while swimming in a pool located on base. He was not on furlough. The action was held to be barred. The Court explained that decedent was "subject to the command of the base authorities," 357 F.2d at 226, and that he "was present and accounted for on the day of his death," *ibid.* "The significant fact here is that *Chambers* was assigned to duty at the Whiteman base, subject to the control of his military superiors." *Id.* at 229. The action is barred "even though at the time [the claimant] ... is not engaged in the performance of military duties." *Id.* at 227 (footnote omitted).

The following passage from the *Chambers* opinion shows beyond doubt the basis of our decision there:

In *Zoula v. United States*, 217 F.2d 81 (5th Cir. 1954), servicemen were injured in a collision between the automobile they occupied and an Army ambulance. The servicemen had passes but recovery under the Federal Tort Claims Act was denied them.

"At the time of the collision resulting in the injuries sued for, both the Plaintiffs were dressed in civilian clothes, were on business of their own, going from one part of the Reservation to the other, for the purpose of getting a check cashed, a hair-cut, making measurements for some clothes, probably spending the week end [sic] in town." *Id.* at 82 n.1.[4]

[4] The servicemen there had passes issued to them and since the injury happened on the base and while they were thus subject to military control, their activities were "incident to service" within the meaning of the *Feres* rule.

Also relevant is *Alexander v. United States*, 500 F.2d 1 (8th Cir. 1974), *cert. denied*, 419 U.S. 1107, 95 S.Ct. 779, 42 L.Ed.2d 803 (1975). *Alexander* extended

[3] *Stencel Aero* affirmed a judgment of this Court, 536 F.2d 765 (8th Cir. 1976), which in turn affirmed a judgment of the United States District Court for the Eastern District of Missouri, 395 F.Supp. 52 (E.D.Mo.1975). This

Court's opinion took a broad view of the *Feres* bar to actions by service people. In doing so, it affirmed a judgment entered by the United States District Judge who sat below in the instant case.

*Feres* to bar a Federal Tort Claims action by a member of the Public Health Service, and held, in addition, that elective surgery at a military hospital is "incident to service" as *Feres* uses that phrase. The *Alexander* opinion emphasizes, among other factors, that the plaintiff, even while in the hospital, was subject to recall by his Public Health Service superiors. The Court also observed, citing, among other cases, *Chambers*, that "this court has, in the past, given a broad reading to the phrase, 'incident to service.'" 500 F.2d at 5. And, on the same page of the opinion, the *Alexander* court refers to "the expansive view this court expressed in *Chambers* . . . ."

We mention two other cases in this Circuit to illustrate what seems to be the clear line of precedent. In *United States v. Carroll*, 369 F.2d 618 (8th Cir. 1966), the *Feres* bar was applied to an action by a reservist. A judgment allowing the action was reversed. This Court reaffirmed *Chambers, supra*, and said:

> It is also clear that the fact that plaintiff was not acting under orders at the time of the accident, but was at liberty to go where he pleased, does not remove him from the scope of the *Feres* doctrine.

369 F.2d at 621. Carroll was a naval reservist traveling by military aircraft to a naval base, but he was free to use any mode of travel he pleased. This court explained, *ibid.*, that

> the crucial question which determined liability of the Government under the Federal Tort Claims Act . . . was not whether the serviceman was acting pursuant to orders at the time of the accident, but rather whether "[t]he peculiar and special relationship of the soldier to his superiors" was in effect at the time of the accident.

The quotation was from *United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954).

We note in addition *United States v. United Services Automobile Ass'n*, 238 F.2d 364 (8th Cir. 1956). There, foreshadowing *Stencel Aero*, the Court barred an action by a serviceman's subrogee. The damages claimed were to a naval lieutenant's private automobile, kept on base "for his personal convenience and pleasure. The car was neither required, nor used, for the performance of official duties." 238 F.2d at 365. Yet, the damages caused to the car were held to be "service incident." *Id.* at 368.

Cases in other jurisdictions confirm this general inclination to read the rule of *Feres* rather broadly. It is clear, for example, that a soldier injured during personal recreation, while not formally on duty, cannot recover against the United States for negligence, so long as the recreation is taking place on a military base or reservation. In addition to *Chambers, supra*, see *Hass v. United States*, 518 F.2d 1138 (4th Cir. 1975). The Fourth Circuit summarized its rationale as follows: "We believe, therefore, that the correct test is the relatively mechanical one derived from the *Feres* language" to the effect that claimants on active duty and not on furlough, injured by the alleged negligence of others in the armed forces, have no right of action against the Government. 518 F.2d at 1140, referring to 340 U.S. at 138, 71 S.Ct. at 155. In other words, *Feres* is not limited to cases of negligent orders given or negligent acts committed in the course of actual military duty.

The authorities illustrating this principle are legion. See, *e. g., Mason v. United States*, 568 F.2d 1135 (5th Cir. 1978) (per curiam) (seaman on active duty; relieved from routine naval duties and tending to personal business on his way home, action held barred); *Zoula v. United States*, 217 F.2d 81 (5th Cir. 1954) (servicemen on active duty; automobile accident on base; servicemen dressed in civilian clothes and tending to personal business in preparation for a week-end pass; action barred); *Mariano v. United States*, 444 F.Supp. 316 (E.D.Va. 1977) (serviceman injured while working as a part-time employee, with permission of his commanding officer, of a club located on base; club maintained by nonappropriated federal funds; plaintiff was in a civilian status when the injury was sustained, on liberty, but not on leave; allegation that the United States negligently failed to pro-

vide him with a safe place in which to work; action barred); *Thomason v. Sanchez*, 398 F.Supp. 500 (D.N.J.1975), *aff'd*, 539 F.2d 955 (3d Cir. 1976) (serviceman operating a motorcycle on base during off-duty hours; action barred); *Coffey v. United States*, 324 F.Supp. 1087 (S.D.Cal.1971) (plaintiff, an active-duty serviceman, had a liberty card and was riding towards the camp exit on his way to off-post liberty; action barred)[4]; *Gursley v. United States*, 232 F.Supp. 614 (D.Colo.1964) (serviceman on three-day pass; injured on base when his quarters were demolished; action barred); *Richardson v. United States*, 226 F.Supp. 49 (E.D.Va.1964) (off-duty serviceman drinking in a non-commissioned officers' club located on base during off-duty hours; plaintiff was on week-end liberty; action barred) (alternative holding); *Ritzman v. Trent*, 125 F.Supp. 664 (E.D.N.C.1954) (plaintiff on active duty, not on leave or furlough; engaged not in the performance of any military duty but in repairing a private automobile; activity in no way related to his duties as a soldier; action barred)[5].

## III. APPLICATION OF THE *FERES* DOCTRINE TO THE FACTS OF THIS CASE

We need not and do not hold that every action for injuries sustained by an active duty serviceman while on base is barred by *Feres*, though the weight of authority tends towards that conclusion. Instead, we analyze the reasons given for the rule laid down by the Supreme Court in *Feres* and consider whether these reasons apply to the undisputed facts of the instant case. While a *per se* rule, such as that apparently applicable in the Fourth Circuit, see *Hass v. United States, supra*, has the virtue of easy application, the better jurisprudential course, in our view, is to examine the facts of each case as they arise and determine whether they fall within the reasons given

by the Supreme Court for its conclusion in *Feres. Cessante ratione, cessat ipsa lex.*

In *Feres* the Supreme Court mentioned three principal reasons for its refusal to allow the action. First, tort actions by members of the armed forces for injuries suffered in the service had not been allowed historically. Second, the Federal Tort Claims Act, 28 U.S.C. § 1346(b), subjects the Government, in cases where the Act applies, to " . . . the law of the place where the act or omission occurred." Since "[t]he relationship between the Government and members of its armed forces is 'distinctively federal in character,' " 340 U.S. at 143, 71 S.Ct. at 158, the Supreme Court thought it anomalous to apply the Act to soldiers on active duty, who have no choice and must serve any place where they are assigned. In addition, Congress had provided by statute "systems of simple, certain, and uniform compensation for injuries or death of those in armed services," *id.* at 144, 71 S.Ct. at 158 (footnote omitted). *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), was distinguished on the ground, among others, that Brooks was on furlough when the injury occurred. 340 U.S. at 146, 71 S.Ct. at 159. The *Feres* court also noted, in distinguishing *Brooks*, that he was not injured while performing duties under orders, but the fact that a plaintiff was performing duties under orders when injured cannot be a condition of the application of the *Feres* principal, because in that very case the plaintiff was asleep when he was killed by the alleged negligence of the United States.

The principles involved were further elucidated in *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), holding that a discharged veteran may maintain an action against the United States under the Tort Claims Act. In distinguishing *Feres*, the *Brown* court emphasized, among other things, "[t]he peculiar and special re-

---

4. 200023.02.72 *But see Parker v. United States*, 611 F.2d 1007 (5th Cir. 1980), discussed below.

5. It is of some interest that this case has twice been cited with approval by this Court. See

*United States v. Carroll, supra*, 369 F.2d at 618; *United States v. United Services Automobile Ass'n, supra*, 238 F.2d at 367.

lationship of the soldier to his superiors . . . [and] the effects of the maintenance of such suits on discipline . . . ." 348 U.S. at 112, 75 S.Ct. at 143. And in *Stencel Aero Eng'r Corp. v. United States, supra,* 431 U.S. at 671–72, 97 S.Ct. at 2058, the Court again summarized the reasons for the basic doctrine forbidding suits by members of the armed forces for injuries occurring while on duty. The Court repeated that the relationship between the Government and members of its armed forces is distinctively federal in character, that the Government's liability to members of the armed forces should not depend on the fortuity of where the soldier happened to be at the time of the injury, that a statutory no-fault compensation scheme providing benefits for servicemen injured in the line of duty had been created by Congress, and that the relationship of a soldier to his superiors was peculiar and special.

These reasons apply to bar plaintiffs' claim here. Private Miller was on active duty; he was not on leave, pass, or furlough; the injury occurred on a military base to which he was assigned and the work he was doing, though not under the immediate supervision of his military superiors, was related to the military mission of the base, since it involved construction of residential quarters to be owned by the Government and located on the base. Although he had been given permission by his military superiors to work at a part-time job during off-duty hours, he remained at all times subject to immediate recall for military duty. Like all soldiers, he was at a particular post not because he had chosen it, but because of his orders. His survivors are entitled to compensation under the applicable acts of Congress, which require no showing of fault or negligence.[6]

Plaintiffs' attempt to avoid the force of these principles by characterizing Private Miller as a "loaned employee," subject to the control, not of his military superiors, but of Northside-Danzi, his part-time and temporary employer. We cannot agree that the "loaned employee" doctrine, whatever its effect for tort or workers' compensation purposes, makes any difference in the present context. The part-time job was simply with Private Miller chose to do during off-duty hours, as plaintiffs in other cases, cited above, chose to repair an automobile, take a drink, go swimming, or engage in other personal business. Certainly work on residential quarters being built on base is no less "incident to service" than these other personal activities. The key point is that Private Miller was always subject to call for active duty, and that the immediacy of his peculiar and special relationship to his military superiors had not been severed by any such formality as a furlough, leave, or pass. Finally, if this case were permitted to go to trial, plaintiffs would seek to establish that the United States, presumably acting through the commanding officer of the post at which Private Miller was stationed, was negligent in, among other respects, failing to de-energize the electric line with which the scaffolding being erected by Miller came in contact. Thus, the conduct of Miller's military superior would be called in question in the civil courts, a circumstance that might well have the destructive effect on military authority and discipline mentioned by the Supreme Court in *Brown.* In any event, the relationship between the facts of this case and possible impairment of military discipline is at least as great as it was in *Feres* itself.

*Parker v. United States,* 611 F.2d 1007 (5th Cir. 1980), one of the few cases allowing suit for injuries sustained on base, per-

---

6. It is impossible to say with certainty on the present record what government benefits Private Miller's parents may be entitled to, but apparently they are eligible at least for a death gratuity, usually equal to six months' pay. See 10 U.S.C. §§ 1475(a)(1), 1477(a)(3)(A), 1478(a). The funeral expenses, 10 U.S.C. §§ 1481, 1482, and dependency and indemnity compensation, 38 U.S.C. § 415, may also be available. Plain-

tiffs here also have an additional remedy, not available to most survivors of service people killed in the line of duty. We were advised at the oral argument en banc that they have been awarded, under the law of Alaska, workers' compensation, payable by Northside-Danzi Construction Company, in the amount of $1,000, as a lump-sum death benefit.

haps comes closest to supporting plaintiffs' position here. Parker had permission to be absent from the base for four days and, when the accident occurred, was on his way to his off-base home. This permission to be absent, the Fifth Circuit felt, "was actually more like a furlough than mere release from the day's duties," *id.* at 1014 (footnote omitted). The implication is that the case would have gone the other way had Parker simply been released from the day's duties, as was the case with Private Miller, when the injury occurred. On balance, Private Miller's case is closer to *Feres* than it is to *Brooks* or *Parker.* As the *Parker* court itself observed: "A distinction can be drawn between those cases involving activities arising from life on the military reservation, and those in which presence on the base has little to do with the soldier's military service," *id.* at 1015. In addition to the facts already noted, it is significant that Private Miller got the job with Northside-Danzi to begin with because he heard about the availability of this part-time employment from a fellow soldier, who had been working for Northside for a week or two. Affidavit of Staff Sergeant John H. Williams, ¶ 3, D.R. 15. The whole situation arose out of life on a military post.

We do not pretend that this is a easy case. There is an element of unfairness in denying Private Miller's survivors the rights that the family of a civilian employee, working side by side with Miller, would unquestionably have had. The result here, however, is no more unfair to the Millers than this Court was to Airman Chambers, or the Supreme Court to Feres. The fact is that the Supreme Court, in its construction of the Federal Tort Claims Act, has decided that full recovery in tort by individual ser-vice people must be subordinated to certain overriding policy considerations. These considerations are present here. "Under these circumstances, no conclusion can be above challenge, but if we misinterpret the Act, at least Congress possesses a ready remedy." *Feres v. United States,* 340 U.S. at 138, 71 S.Ct. at 155.

The judgment is affirmed.

HEANEY, Circuit Judge, with whom ROSS and McMILLIAN, Circuit Judges, join, dissenting.

I would adhere to the panel opinion of this Court and would reverse the decision of the district court granting a summary judgment to the government. In my view, the majority ignores not only the plain language of the Federal Tort Claims Act but also the intent of Congress. If the Congress of the United States feels that it should bar claims of servicepersons who are injured under circumstances similar to those present in this case, it can do so with a simple amendment to the Act. Until that time, we should give effect to its words and intent.

The Federal Tort Claim Act, adopted in 1948, waived the government's traditional immunity from tort liability and granted the federal district courts jurisdiction over tort claims brought against the United States.[1] The Act also specified those claims as to which Congress did not intend to waive immunity.[2] The Act was passed to mitigate the unjust consequences of the sovereign immunity doctrine, extending a remedy to those previously unprotected from the negligence of government employees, and to rid Congress of the burden of private bills for relief.[3] With a few excep-

1. The Act provides that the United States will be liable for the negligent acts or omissions of any government employee "while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (1976). Section 2671 of the Act defines "employee of the government" to in-clude "members of the military or naval forces of the United States."

2. 28 U.S.C. § 2680 (1976).

3. *See Rayonier, Inc. v. United States,* 352 U.S. 315, 319–320, 77 S.Ct. 374, 376–377, 1 L.Ed.2d 354 (1957); *Indian Towing Co. v. United States,* 350 U.S. 61, 68–69, 76 S.Ct. 122, 126–127, 100 L.Ed. 48 (1955); *United States v. Yellow Cab Co.,* 340 U.S. 543, 549–550, 71 S.Ct. 399, 404, 95 L.Ed. 523 (1951); Note, *The Supreme Court*

tions,[4] the Supreme Court has construed the Federal Tort Claims Act to be a broad waiver of immunity, and has narrowly applied the statutory exceptions.[5]

Section 2680(j) of the FTCA protects the United States from liability for any claims arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war.[6] No exception prohibits servicepersons from suing the government and the legislative history of the Act indicates that Congress did not intend to bar all tort claims by armed service personnel.[7] Nonetheless, in 1950, the Supreme Court created a judicial exception to the Federal Tort Claim Act: the government was not to be held liable for injuries sustained by servicepersons engaged in activities "incident to service." *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950).

As the majority notes, the *Feres* doctrine was grounded on several rationale: (1) the "distinctly federal" character of the relationship between the government and the armed forces which should not be disturbed by state laws; (2) the absence of analogous private liability; (3) the existence of a com-

prehensive compensation system for service personnel; and (4) the "peculiar and special relationship of the soldier to his superiors * * * [and] the effects of the maintenance of such suits on discipline."[8] Subsequent Supreme Court decisions have limited the importance of the first three rationale;[9] the feared effect on military discipline remains the most significant justification for barring servicepersons' tort claims.[10]

Divining the limits of the *Feres* doctrine has been a difficult task. The key term—"incident to service"—has never been defined by the Supreme Court. Many lower courts have tended to automatically deny tort claims of servicepersons injured on a military base or while they were on active duty.[11] In so doing, the courts have distorted the intent of Congress.

It may be reasonable to presume that when a serviceperson is on base or on active duty status, he or she is engaged in an activity incident to service. The military is more than just a career or job; it is a way of life. Every aspect of servicepersons' daily routine is affected by the military—their livelihood, living arrangements, meals, recreation, personal property, travel and medi-

---

and the Tort Claims Act: End of an Enlightened Era?, 27 Cleveland State L.Rev. 267, 271 (1978).

4. *See, e. g., Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977); *Laird v. Nelms*, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972).

5. *See* Note, *The Supreme Court and the Tort Claims Act: End of an Enlightened Era?, supra*, 27 Cleveland State L.Rev. at 268.

6. 28 U.S.C. § 2680(j) (1976).

7. Sixteen of the eighteen tort claims bills introduced in Congress between 1925 and 1935 contained exceptions denying recovery to members of the armed forces. A similar exception was not included in the bill enacted as the present Federal Tort Claims Act. *See Feres v. United States*, 340 U.S. 135, 139, 71 S.Ct. 153, 156, 95 L.Ed. 152 (1950); *Brooks v. United States*, 337 U.S. 49, 51–52, 69 S.Ct. 918, 919–920, 93 L.Ed. 1200 (1949). The exclusion reflects a deliberate choice by Congress, and not an inadvertent omission, in light of the "consistent course of development of the bills proposed over the years and the marked reliance by each succeeding Congress upon the language of the earlier

bills." *United States v. Muniz*, 374 U.S. 150, 156, 83 S.Ct. 1850, 1854–1855, 10 L.Ed.2d 805 (1963).

8. *United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954).

9. *See Rayonier, Inc. v. United States, supra; Indian Towing Co. v. United States, supra; United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954). *But cf. Stencel Aero Engineering Corp. v. United States, supra* (analyses of all the *Feres* rationale).

10. *See United States v. Muniz, supra*, 374 U.S. at 162, 83 S.Ct. at 1857–1858; *Hale v. United States*, 416 F.2d 355, 357 (6th Cir. 1969); *United States v. Carroll*, 369 F.2d 618, 621 (8th Cir. 1966); *Coffey v. United States*, 324 F.Supp. 1087, 1088 (S.D.Cal.1971).

11. *See, e. g., Hass v. United States*, 518 F.2d 1138 (4th Cir. 1975); *Knoch v. United States*, 316 F.2d 532 (9th Cir. 1963); *Mariano v. United States*, 444 F.Supp. 316 (E.D.Va.1977), *aff'd*, 605 F.2d 721 (4th Cir. 1979); *Frazier v. United States*, 372 F.Supp. 208 (M.D.Fla.1973).

cal care. However, any presumption raised by the situs of the injury or the serviceperson's status must be rebuttable. The *Feres* Court did not prohibit claims for injuries sustained by service personnel on active duty or on base—it only prohibited claims for injuries sustained "incident to service." We must carefully scrutinize the facts of each case to determine what the serviceperson was actually doing at the time of the injury, or the *Feres* "test" will be meaningless.

If we give effect to the intent of Congress and apply *Feres* as it is written, we have no alternative but to reverse the decision of the District Court to grant summary judgment to the government. At the time of his death, Private Miller was not engaged in an activity incident to his service. He was working in a civilian capacity for a private contractor. He was off duty and had been given permission by his military superiors to work the part-time job. He was not involved in any military mission or under compulsion of any military orders. He was not availing himself of a privilege acquired by virtue of his military status. He was subject to the direct control and authority of his civilian employer, not his military superiors.

This case presents a factual setting clearly not comparable to those of cases previously decided under the *Feres* doctrine. Part-time independent employment is not a normal part of military life. The military is responsible for providing recreational, cultural and athletic activities to promote the morale and health of service personnel. Injuries incurred in the course of such activities, which have prompted many of the *Feres* line of cases, are clearly "incident to service." The military, however, is not responsible for facilitating part-time civilian employment by its members. As the majority acknowledges, it is important to distinguish between activities arising from life on the military reservation and those in

which the soldier's presence on base at the time of the injury has little to do with his military service. *Parker v. United States*, 611 F.2d 1007, 1015 (5th Cir. 1980). Only the former falls within the rule of *Feres.* The majority's analysis approaches that of a "but for" test: "but for" his military service, Miller would not have known about, and taken, the part-time civilian job, and, therefore, would not have been injured. The Supreme Court has rejected such a "but for" test; more is needed for an activity to be "incident to service." *See United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954); *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949); *Parker v. United States*, 611 F.2d 1007, 1011 (5th Cir. 1980).

The result reached by the majority would clearly be correct if, during the course of his duty hours, Miller had been assisting the Army in the scaffolding project under the supervision and control of Army personnel. Such activity would clearly be "incident to service." Moreover, a suit by Miller under such circumstances would likely involve the kind of second-guessing of orders by military superiors that the *Feres* doctrine was meant to avoid.

Here, however, Miller's military superiors, in giving him permission to work for the independent contractor, temporarily released their control over his activities. Contrary to the majority's view, the "immediacy of his peculiar and special relationship to his military superiors" *was* severed. The fact that he could have been recalled for duty at any time by his military superiors is not persuasive. The same would be true whether he was off base, on leave or on furlough [12]—situations where FTCA claims have been allowed. The fact of the matter is that at the time of his injury, Miller had *not* been recalled to duty. Miller's activities at that time were under the direct control of an independent contractor.[13] The

---

12. *Parker v. United States*, 611 F.2d 1007, 1014 n.10 (5th Cir. 1980); *Hand v. United States*, 260 F.Supp. 38, 41 (M.D.Ga.1966).

13. *See* Affidavit of James William Harvey, ¶ 4, Designated Record 36.

commanding officer's involvement in the project, and his resultant alleged negligence, is remote. It is nonsense to assume that his, and the other military officers', authority to conduct the day-to-day affairs of the Army will be impaired by allowing the decedents' survivors to litigate the issue of whether an electric wire on base was properly maintained.[14]

None of the cases. cited by the majority command the result reached in this case. There have been no decided cases where a serviceperson has been injured while employed by a third party to perform duties not a part of his or her military function. The Supreme Court and Eighth Circuit decisions denying plaintiffs FTCA relief involved activities clearly incident to service; this is also true of most of the decisions of foreign jurisdictions. The claim in *Chambers v. United States*, 357 F.2d 224 (8th Cir. 1966), resulted from injuries sustained by a serviceman while swimming in an on-base pool; as previously noted, recreational activities are an integral part of life on a military post and are, therefore, "incident to service." [15] It is also appropriate that if a serviceperson is injured while taking advantage of a privilege permitted because of his or her military status, the activity is "incident to service." *Alexander v. United States*, 500 F.2d 1 (8th Cir. 1974) (surgery in a military hospital),[16] and *United States v. Carroll*, 369 F.2d 618 (8th Cir. 1966) (reservist traveling by military transport to a military drill),[17] are consistent with this principle. *Feres* itself made it clear that injuries incurred by the destruction of on-base living quarters are incident to service;"[18] it is only by virtue of their military service that personnel are quartered on the military reservation.

The only case cited by the majority somewhat analogous to this one is *Mariano v.*

14. It is .true that this same argument could have been made in the *Feres* case itself—no specific disciplinary problems would result from allowing suit by the survivors of a soldier killed while sleeping in his barracks. It has been argued that "*Feres* can only be explained on the ground that the enforcement of army discipline in general is more difficult if persons involved in enforcing discipline may be treated as the causative agents of suits against the United States brought by persons who are the subject of army discipline." *Coffey v. United States, supra*, 324 F.Supp. at 1088. The effect that suits may have on discipline, while generally supporting the *Feres* doctrine, has not governed its application. The test has been whether the injurious activity was "incident to service."

15. *See Richardson v. United States*, 226 F.Supp. 49 (E.D.Va.1964) (drinking in noncommissioned officers' club); *Hass v. United States, supra* (riding horse procured from the Marine Corps-owned and operated stable).

A recreational activity that has resulted in many FTCA claims is the on-base operation of privately owned motor vehicles for personal purposes. *See, Mason v. United States*, 568 F.2d 1135 (5th Cir. 1978); *United States v. United Services Automobile Ass'n*, 238 F.2d 364 (8th Cir. 1956); *Zoula v. United States*, 217 F.2d 81 (5th Cir. 1954); *Thomason v. Sanchez*, 398 F.Supp. 500 (D.N.J.1975), aff'd, 539 F.2d 955 (3rd Cir. 1976); *cf. Ritzman v. Trent*, 125 F.Supp. 664 (E.D.N.C.1954) (repairing private automobile). Denial of such claims is consist-

ent with the notion that activities normally arising from life on a military post are "incident to service."

A more difficult question is presented when a serviceperson is injured in a private vehicle while on the way off the base for a liberty. The results reached by the courts have been inconsistent. *Compare Parker v. United States, supra* (action allowed), *with Coffey v. United States, supra* (action barred). The *Parker* Court properly refused to let the fortuity of where the accident occurred govern and concluded that plaintiff's conduct in driving toward home on leave was not "incident to service." *Parker v. United States, supra*, 611 F.2d at 1015.

16. *Accord, Feres v. United States, supra; Shults v. United States*, 421 F.2d 170 (5th Cir. 1969); *Knoch v. United States, supra; Buer v. United States*, 241 F.2d 3 (7th Cir. 1956), cert. denied, 353 U.S. 974, 77 S.Ct. 1059, 1 L.Ed.2d 1136 (1957).

17. Courts have similarly denied liability for servicepersons injured while riding in a military vehicle for nonmilitary purposes. *See, e. g., Archer v. United States*, 217 F.2d 548 (9th Cir. 1954), cert. denied, 348 U.S. 953, 75 S.Ct. 441, 99 L.Ed. 745 (1955); *Herreman v. United States*, 332 F.Supp. 763 (E.D.Wis.1971), aff'd, 476 F.2d 234 (1973).

18. *Feres v. United States, supra; Gursley v. United States*, 232 F.Supp. 614 (D.Colo.1964).

*United States,* 444 F.Supp. 316 (E.D.Va. 1977), *aff'd,* 605 F.2d 721 (4th Cir. 1979). Mariano was employed in a civilian capacity during his off-duty hours as a night manager at the Tradewinds Club, a recreational facility owned and operated by the United States at the Naval Station in Norfolk. He was injured while attempting to stop a fight at the Club. His claim was held to be barred by *Feres.*

Though factually similar, the *Mariano* case is distinguishable in an important respect. The Tradewinds Club, established for the purpose of the "well-being, morale and efficiency of enlisted personnel," was the direct responsibility of military personnel. The Club's operation and administration was pursuant to instructions and guidelines set forth in manuals prepared by the Chief of Naval Operations. Application of the *Feres* doctrine is much more appropriate in a factual setting such as *Mariano,* where the claimant was under the direct control of military personnel, rather than an independent employer.

To the extent that *Mariano,* and other cases decided by foreign courts, cannot be distinguished, I respectfully disagree with their results. The *Feres* doctrine must not be extended beyond its proper scope. It is limited to those activities of service personnel which are "incident to service." As such, it does not serve to bar Miller's claim in this case.