**Aleck ALEXANDER, Appellant, Cross-Appellee,**

**v.**

**UNITED STATES of America, Appellee, Cross-Appellant.**

**Nos. 73–1816, 73–1850.**

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1974.

Decided July 22, 1974.

**2**

———◆———

Stanton R. Koppel, Atty., Dept. of Justice, Washington, D. C., for the U. S.

James W. Jeans, Kansas City, Mo., for Alexander.

Before BRIGHT, STEPHENSON and WEBSTER, Circuit Judges.

STEPHENSON, Circuit Judge.

The central issue to be determined on this appeal is whether the statutory disability compensation plan[1] for commissioned officers of the Public Health Service is an exclusive remedy which precludes an action for medical malpractice under the Federal Tort Claims Act.[2] The trial court held that the statutory benefits were not such an exclusive remedy and awarded damages to plaintiff Alexander. We disagree and reverse that determination.

Plaintiff Alexander,[3] a commissioned officer of the Public Health Service (PHS), underwent elective surgery at a military hospital on March 20, 1968 for removal of his gall bladder. He was entitled to such free medical care as a member of the "uniformed services," as defined in 10 U.S.C. § 1072(1) (1970).[4]

During the course of the operation, an anesthesiologist's tube placed in Alexander's trachea malfunctioned, either be-cause of improper insertion or inadequate monitoring by the supervisory personnel. As a result of this negligence, Alexander suffered numerous physical infirmities, including temporary blindness and paralysis, residual uncoordination of the feet and upper extremities, and permanently defective vision.

Due to these injuries, Alexander was rated 100% disabled and placed on temporary disability retirement status for a period of approximately two and one-half years, pursuant to the procedures specified in 10 U.S.C. §§ 1205, 1210, 1211 (1970). During that time he was paid disability compensation in excess of $44,000 under the Career Compensation Act, see 10 U.S.C. §§ 1202, 1401, 42 U.S.C. § 213a (1970). On August 6, 1972, Alexander was recalled to active duty with the PHS as provided in 10 U.S.C. §§ 1210, 1211 (1970).

In his complaint, plaintiff grounded jurisdiction on 28 U.S.C. § 1346(b) (1970) and the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (1970). He claimed damages for the alleged negligence of the doctors and other medical personnel who had participated in his anesthetization. The government argued that Alexander's suit should be dismissed on the basis of the principles established in United States v. Demko, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966) and Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). We agree.

In *Demko, supra,* the Supreme Court considered the question of whether an injured federal prisoner, having received disability compensation under a specific federal statute,[5] could maintain an action for damages under the Federal Tort Claims Act. The Court denied relief un-

---

1. See 42 U.S.C. § 213a(a)(2); 10 U.S.C. §§ 1202, 1401 (1970).

2. 28 U.S.C. §§ 2671–2680 (1970).

3. Plaintiff Alexander is the appellant in No. 73–1816 and the cross-appellee in No. 73–1850.

4. 10 U.S.C. § 1072(1) (1970) provides: "Uniformed services" means the armed forces and the Commissioned Corps of the Environmental Science Services Administration and of the Public Health Service.

5. 18 U.S.C. § 4126 (1970).

der the Act, stating that "where there is a compensation statute that reasonably and fairly covers a particular group of workers, it presumably is the exclusive remedy to protect that group." *Id.* at 152 of 385 U.S., at 384 of 87 S.Ct.

In so holding, the Court expressly rejected the argument, made by Alexander in the case before us, that a compensation statute will be presumed to be a non-exclusive remedy in the absence of specific language to the contrary. *Id.* The Court noted that generally workmen's compensation laws are considered to be exclusive substitutes for common law tort remedies and cited two cases, Patterson v. United States, 359 U.S. 495, 79 S.Ct. 936, 3 L.Ed.2d 971 (1959), and Johansen v. United States, 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051 (1952), as having established a "general rule" of presumed exclusivity. *Id.* at 151 of 385 U.S., 87 S.Ct. 382. *See also* Feres v. United States, 340 U.S. 135, 144, 71 S. Ct. 153, 95 L.Ed. 152 (1950). As pointed out in *Demko*, the lower federal courts have extended this principle to include other statutory systems. *Id.* at 151 n. 4 of 385 U.S., 87 S.Ct. 382.

■ The application of the *Demko* presumption of exclusivity to any particular fact situation is dependent upon satisfying two critical requirements. First, the individual whose claim may be barred under the principle of exclusivity must be covered by a compensation plan. Second, that plan must provide comprehensive benefits to the injured party. 385 U.S. at 152–153, 87 S.Ct. 382.

■ We believe that both tests are met in this case. Clearly, Alexander's entitlements under 10 U.S.C. §§ 1071–1085, 42 U.S.C. § 213a(a)(2) (1970), including free medical care and disability payments, constitute coverage for purposes of *Demko*. This distinguishes the present case from United States v. Mun-

iz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed. 2d 805 (1963), in which neither plaintiff was covered by a compensation system. *Id.* at 160, 83 S.Ct. 1850. Furthermore, there can be little doubt that this system "reasonably and fairly" affords relief to those within its purview. Since the health and disability coverage extended to commissioned officers of the PHS is, by statute, made identical to that received by members of the armed forces, 10 U.S.C. §§ 1071–1085, 1201–1212, 42 U.S.C. § 213a (1970), the Supreme Court's approval of the military compensation plan in Feres v. United States, 340 U.S. 135, 144, 71 S.Ct. 153, 95 L.Ed. 152 (1950), compels us to find this system comprehensive with regard to Alexander.[6] In addition, these benefits compare quite favorably with those available under two other plans which the Supreme Court has deemed to be exclusive remedies: the Federal Employees' Compensation Act, 5 U.S.C. § 8101 et seq. (1970),[7] in Johansen v. United States, *supra*, 343 U.S. at 439–441, 72 S.Ct. 849, and the Federal Prison Industries Fund, 18 U.S.C. § 4126 (1970), in United States v. Demko, *supra*, 385 U.S. at 152–153, 87 S.Ct. 382.

■ Thus, in summary, we believe that the rationale of exclusivity that the Supreme Court expressed in *Demko* is fully applicable to this case. Because Alexander was covered by a comprehensive compensatory plan at the time of his injury, we hold that his tort recovery was improper. By permitting him to recover, the trial court in effect granted Alexander greater rights than government employees, prisoners, or members of the armed forces. Absent a showing of congressional intent to endow PHS officers with special benefits, the presumption of an exclusive remedy must stand.

Furthermore, we disagree with the trial court's determination that Alexan-

---

6. We do not address ourselves, at this point, to the determination by the trial court that Alexander's injury claim was not barred by *Feres.* We refer here to *Feres* only as evi-

dence that the military-PHS coverage is considered to be a comprehensive compensation system.

7. Formerly, 5 U.S.C. §§ 751–794.

der's suit was not barred by the specific rationale of Feres v. United States, *supra,* as it relates to suits under the Federal Tort Claims Act by members of the armed forces. In our view, the analogy between *Feres* and the present case is so close that it compels the same result.

In *Feres,* the Court considered three claims under the Federal Tort Claims Act, two of which involved medical malpractice by military doctors as in the instant case. 340 U.S. at 137, 71 S.Ct. 153. In holding these suits to be barred, the Court emphasized that the servicemen were already covered by a system of "simple, certain, and uniform compensation for injuries or death." *Id.* at 144, 71 S.Ct. at 158. As pointed out above, commissioned officers of the PHS are covered by the same compensation system that applies to members of the armed services.

To further justify their holding, the Court took note of the extraordinary relationship that exists between the members of the armed forces and the government. *Id.* at 143–144, 71 S.Ct. 153. In United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), the Court elaborated on this point, stating that tort claims arising out of activity incident to military service were held barred in *Feres* due to

> [t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty * * *. *Id.* at 112, 75 S.Ct. at 143.

We are convinced that the relevant conditions of service in the Public Health Service are very similar to those in the armed forces and demonstrate an equally special relationship and need for discipline.

For example, the PHS is designated as one of the "uniformed services" along with the armed forces and the Commissioned Corps of the Environmental Science Services Administration. 10 U.S.C. § 1072 (1970). The PHS is organized along military lines, each officer grade having a statutorily stated military rank equivalent. 42 U.S.C. § 207 (1970). Regulations specify that failure to follow out orders of superior officers will result in disciplinary action. 42 C.F.R. §§ 21.261–84 (1973). In addition, PHS officers are assigned to active duty status and are subject to recall to duty during any period of leave. 42 C.F.R. §§ 21.88–91 (1973). These similarities to military service illustrate how the concern voiced in *Feres* regarding the effect of tort suits on discipline and internal structure apply with equal force to the Public Health Service.

■ Counsel for the plaintiff argues, however, that *Feres* is inapplicable here because the injury complained of was not sustained "incident to service." In the development of the *Feres* rationale, this element has been the determinative factor in numerous cases. *See, e. g.,* Hall v. United States, 451 F.2d 353 (CA1, 1971); Lowe v. United States, 440 F.2d 452 (CA5), cert. denied, 404 U. S. 833, 92 S.Ct. 83, 30 L.Ed.2d 64 (1971); Shults v. United States, 421 F.2d 170 (CA5, 1969); United States v. Lee, 400 F.2d 558 (CA9, 1968), cert. denied, 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969); Buckingham v. United States, 394 F.2d 483 (CA4, 1962); Bailey v. DeQuevedo, 375 F.2d 72 (CA3), cert. denied, 389 U.S. 923, 88 S.Ct. 247, 19 L. Ed.2d 274 (1967); United States v. Carroll, 369 F.2d 618 (CA8, 1966); Chambers v. United States, 357 F.2d 224 (CA8, 1966); Buer v. United States, 241 F.2d 3 (CA7, 1956), cert. denied, 353 U.S. 974, 77 S.Ct. 1059, 1 L.Ed.2d 1136 (1957). *See also* Annot., 64 A.L. R.2d 679 (1959). *But see* Hale v. United States, 416 F.2d 355 (CA6, 1969). In our view, the facts and the ample authority from this and other circuits support a determination that Alexander's elective surgery was incident to service for purposes of the *Feres* doctrine.

In the first place, PHS regulations clearly indicate that even when Alexander was in the hospital on sick leave, he was considered to be on active duty status, subject to recall. 42 C.F.R. § 21.91 (1973). This fact immediately distinguishes this case from Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L. Ed. 1200 (1949), in which the plaintiff was on furlough when injured; and from United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), in which the plaintiff was injured by an army surgeon after his discharge from the service. *See* United States v. Lee, 400 F.2d 558, 560–561 (CA9, 1968), cert. denied, 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969); Knight v. United States, 361 F.Supp. 708, 713 (W.D. Tenn.1972), aff'd, 480 F.2d 927 (CA6, 1973).

This court has, in the past, given a broad reading to the phrase, "incident to service." For example, in Chambers v. United States, 357 F.2d 224 (CA8, 1966), Judge Mehaffey, writing for the court, indicated that as long as the serviceman was engaged in an activity "related to and dependent upon his military service" while "subject to military control," any consequent injury would be "incident to service." *Id.* at 229 & n. 4. Later that same year, we held that even when a military relationship is entered into at the choice of the plaintff, the status of being subject to "military courtesies and discipline" brings the activity within the "incident to service rule." United States v. Carroll, 369 F. 2d 618, 621 (CA8, 1966).

In addition to these cases, two recent decisions from the Fifth Circuit are particularly relevant here. In Shults v. United States, 421 F.2d 170 (CA5, 1969), that court made it clear that malpractice committed upon a serviceman in a military hospital was incident to service even though he was on leave at the time he was admitted. The court stated:

It is obvious that the injured man could not have been admitted, and would not have been admitted, to the Naval Hospital except for his military status * * *. It inescapably follows that whatever happened to him in that hospital and during the course of that treatment had to be "in the course of activity incident to service." *Id.* at 171–172.

Subsequently, the Fifth Circuit, in Lowe v. United States, 440 F.2d 452 (CA5), cert. denied, 404 U.S. 833, 92 S.Ct. 83, 30 L.Ed.2d 64 (1971), extended this rationale to include elective surgery performed upon a serviceman at the advice of military doctors.

Given the expansive view this court expressed in *Chambers* and *Carroll* with regard to "incident to service," these two cases are especially persuasive. In the present case, as in *Shults*, Alexander was operated upon in a military hospital solely because of his employment status. By joining the PHS, he became subject to the privileges and limitations that attend that Service. He chose to avail himself of the service-related medical treatment. Clearly, under *Shults*, his operation was incident to his service as a PHS officer. Furthermore, as in *Lowe*, the fact that Alexander's surgery was elective in nature does not alter the result. On these facts, we are convinced that the suit should have been decided on the basis of *Feres*.

Various damage-related issues were argued to this court on appeal. We do not consider those issues inasmuch as we have determined that this action should have been dismissed on the liability issue.

Reversed with instructions to dismiss at appellant's costs.