Amy **LEVIN**, formerly **Bumberg**, Plaintiff,

v.

**UNITED STATES of America et al.,**
**Defendants.**

**Civ. A. No. 72–3721–T.**

United States District Court,
D. Massachusetts.

Nov. 12, 1975.

Guterman, Horvitz, Rubin & Rudman, Stanley H. Rudman, Boston, Mass., for plaintiff.

James N. Gabriel, U. S. Atty., William E. Hughes, Asst. U. S. Atty., for defendants.

## MEMORANDUM

TAURO, District Judge.

This action is brought by Amy Levin, formerly Bumberg, widow and administratrix of the estate of Harold Bumberg, M.D., a former Public Health Service (P.H.S.) physician at the Brighton, Massachusetts P.H.S. hospital. Plaintiff claims that her former husband's death by suicide was caused by the negligence of the defendant United States of America and by the intentional infliction of emotional distress by Dr. Bumberg's immediate supervisors, defend-ants Dr. Blade and Dr. Clay. The basis of jurisdiction for the claim against the Government is the Federal Tort Claims Act (F.T.C.A.), 28 U.S.C. §§ 2671–80, and against the individual defendants is diversity of citizenship, 28 U.S.C. § 1332.

■ Early in the course of this litigation defendants filed preliminary motions to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. One of the grounds for these motions was the doctrine of *Feres v. U. S.*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and its progeny, which bars members of the armed services from pressing tort claims against the Government or individually against their colleagues in the military for service-connected injuries. Defendants sought to extend the rationale of these cases to members of the P. H.S. making claims for their service-connected injuries. On November 19, 1973 this court denied these motions. On July 22, 1974 the United States Court of Appeals for the Eighth Circuit decided the case of *Alexander v. United States*, 500 F.2d 1 (8 Cir. 1974), holding that *Feres* and the related subsequent cases apply to P.H.S. personnel and bar their tort suits against the government for service-connected injuries. For reasons elaborated herein this court is persuaded by the logic of the *Alexander* decision and, therefore, grants summary judgment in favor of all three defendants.

Briefly, accepting the allegations of plaintiff's complaint as true, the facts of this case are that Dr. Bumberg joined the P.H.S. in January of 1971 as a commissioned officer, assigned to the Governor's Island Coast Guard Base in New York City. During this period Dr. Bumberg became depressed about the "military atmosphere" in the P.H.S. and about orders placing him on a six-month cruise to Antarctica. Levin Dep. 24. As a result of this depression he saw a psychiatrist. Ultimately, the cruise order was rescinded. In October 1971 Dr.

Bumberg was ordered transferred to the P.H.S. Hospital in Brighton, Massachusetts, and on October 4, he reported to his supervisor, Dr. Blade, for duty.

Dr. Blade assigned Dr. Bumberg, over his objections, to the surgical ward. On October 5, after Dr. Bumberg renewed his complaint to Dr. Blade about the assignment to surgery, Dr. Blade set up an appointment for Dr. Bumberg with a Dr. Katz, the P.H.S. staff psychiatrist, for the purpose of evaluating Dr. Bumberg's suitability for work on the surgery ward. Dr. Katz found Dr. Bumberg capable of performing surgical duties, and Dr. Bumberg began surgical work as ordered. For the next two and a half weeks, plaintiff alleges that defendants Dr. Blade and Dr. Clay, despite their knowledge of Dr. Bumberg's fragile emotional state, his depression and his intense dislike of surgical work, intentionally harassed and belittled Dr. Bumberg, threatened to convene a Medical Fitness Board to consider the possibility of expelling Bumberg from the P.H.S. (which, at that time, would have made Dr. Bumberg's conscription into the regular army almost inevitable), threatened to "blackball" Dr. Bumberg with the local medical society, and placed Dr. Bumberg on probation for a two-week period. On October 21, 1971 Dr. Bumberg jumped from his fifth-story office window. He lingered with intermittent periods of consciousness until October 26, 1971, when he died of the injuries he received in the fall. The plaintiff alleges, and again the court accepts as true for the purposes of this motion, that Dr. Bumberg's suicide was the result of the Government's negligence in failing to recognize Dr. Bumberg's suicidal tendencies, and the two individual defendants' intentional acts.

Plaintiff, as Dr. Bumberg's widow, was eligible for benefits pursuant to 42 U.S.C. § 213a which makes applicable to the P.H.S. the benefit scheme available to commissioned officers of the army and their survivors. Under these provisions Mrs. Levin received a death gratu-

ity of $3,000 and, as of her interrogatory on September 26, 1973, $6,453.00 in ongoing veterans' dependency and indemnity benefits.

The Supreme Court first addressed the issue of tort suits by members of the uniformed services under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80, in *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949). This case allowed a soldier injured while on furlough by a vehicle driven by a civilian army employee to sue the Government under the F.T.C.A. The case noted, however, that "[w]ere the accident incident to the [plaintiff's] service, a wholly different case would be presented." *Id.* at 52, 69 S.Ct. at 920. *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) was that "wholly different case." It held that members of the armed services who suffered injuries incident to their service in the military could not recover against the Government under the F.T.C.A.

The Court found, *first*, that recovery was inconsistent with the underlying purpose of the F.T.C.A., which was to mitigate the extreme results of strict sovereign immunity. Military personnel had never suffered from this doctrine because of the existence of an independent system of indemnity benefits.

*Second*, the Court noted that the F.T.C.A. did not create any new causes of action but merely allowed claims against the Government in situations where, but for sovereign immunity, liability would exist. The Court found no rule which in a private setting would permit suits by soldiers against their superiors or their sovereign.

*Third*, the Court found it "not without significance" that, under the F.T.C.A., liability is governed by "the law of the place where the act or ommission occurred." 28 U.S.C. § 1346(b). It would be unfair, the Court felt, to bind a soldier who usually has no control over the place of his assignment to the law of the place where he is injured.

*Fourth,* the Court noted that the relationship of the Government to the armed services was "distinctly federal in nature," and that federal law itself did not recognize a cause of action such as that forwarded by the plaintiffs in *Feres.*

*Fifth,* the Court emphasized the existence of "enactments by Congress which provide simple, certain, and uniform compensation for injuries or death of those in armed services." 340 U.S. at 144, 71 S.Ct. at 158. The existence of this system indicated to the Court that Congress had not contemplated suits by servicemen under the F.T.C.A. for injuries incident to their service.

*Sixth,* and finally, the Court noted that soldiers were, by the nature of their situation, at a disadvantage in litigation, especially against their superior officers and against the Government. The statutory scheme established for them, it was felt, should relieve them of the responsibility and, by implication, of the right to bring an independent suit in tort.

In 1952, using the analogy of the *Feres* decision, the Supreme Court held that the Federal Employees Compensation Act, 5 U.S.C. § 8101 *et seq.* (1970), provides the exclusive benefits available to a seaman who is injured through the negligence of the United States in the performance of his duty as a member of the crew of a public vessel of the United States. *Johansen v. United States,* 343 U.S. 427, 72 S.Ct. 849, 96 L.Ed. 1051 (1952).

In *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954) the Supreme Court addressed the case of a discharged veteran who suffered injury through negligent treatment of a service-connected disability in a Veterans Administration hospital. The Court held that Brown was not barred by the *Feres* doctrine from suing under the F.T.C.A., concluding that "the negligent act giving rise to the injury in the present case was not incident to the military service . . . ." 348 U.S. at 113, 75 S.Ct. at 144. The Court also of-

fered an additional explanation for its decision in *Feres* to bar torts suits by servicemen, stating that

[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty, led the Court to read that Act as excluding claims of that character. *Id.* at 112, 75 S.Ct. at 143.

Courts subsequently have found considerations of military discipline, while an important factor in some cases, not essential to the doctrine of *Feres.*

Although the rule of non-liability for injuries to servicemen "incident to service" is designed to avoid interference with military discipline, the Supreme Court has never indicated that *Feres* should be limited to situations which pose a threat or interference with military discipline. *United States v. Lee,* 400 F.2d 558, 564 (9th Cir. 1968).

In this Circuit, the Court of Appeals has recently stated flatly *"Feres* required no nexus between discipline and injury. We see no occasion to depart therefrom, even if we could." *Hall v. United States,* 451 F.2d 353, 354 (1st Cir. 1971).

In *Patterson v. United States,* 359 U.S. 495, 79 S.Ct. 936, 3 L.Ed.2d 971 (1959) the Supreme Court re-affirmed its holding in *Johansen* limiting the recovery right of certain civilian seamen to their benefits under the Federal Employees Compensation Act. The *Feres* doctrine was cited as authority for this holding despite the fact that no military personnel were involved.

*United States v. Demko,* 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966) dealt with a federal prisoner who had received compensation benefits under 18 U.S.C. § 4126 for injuries sustained while performing a prison task, but who also was attempting to sue under the F.

T.C.A. Citing the *Patterson* and *Johansen* cases, the Court found Demko's statutory remedies exclusive and barred the additional tort suit. *Demko* distinguished a prior decision, *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963) which allowed a suit by an injured federal prisoner, on the ground that the statutory compensation scheme did not cover the plaintiff in *Muniz*, whereas it did in *Demko*. The Court concluded in *Demko* that "where there is a compensation statute that reasonably and fairly covers a particular group of workers, it presumably is the exclusive remedy to protect that group." 385 U.S. at 152, 87 S.Ct. at 384.

There is no reasonable way, in law or in logic, to distinguish the position of the P.H.S. officer from that of the military man, for purposes of tort suits.

The P.H.S. compensation plan is the same "simple, certain and uniform" system described in the *Feres* decision. 42 U.S.C. § 213a (1974). Thus, this case is easily distinguished from *Muniz* where the plaintiff was allowed to sue because no plan of compensation covered him.

Dr. Bumberg's injuries and subsequent death were clearly "service-connected." This factor distinguishes his case from *Brooks* and *Brown, supra,* where the plaintiffs were, respectively, on furlough from and discharged out of the service.

Considerations persuasive to the Court in *Feres* are equally applicable to this case. The P.H.S. compensation system eliminates the need for a relaxation of sovereign immunity, the underlying purpose of the F.T.C.A. Moreover, it is not clear that, but for sovereign immunity, there would be liability here. No·

less than the military, this uniformed service, specially created by the sovereign, is out of the normal stream of the common law. The same unfairness would occur in applying "the law of the place" to P.H.S. officers, who have no more control over their duty stations than military men. The law governing the P.H.S. is "distinctly federal in nature," being the subject of detailed federal statutes and regulations. Finally, like the solier, the P.H.S. officer is at a disadvantage in litigating his claims against his government and his superior officers.

Plaintiff attempts to distinguish this case by superimposing on the *Feres* doctrine the military discipline rationale amplified in *Brown*. This reasoning, however, is faulty in two respects. Military discipline is clearly only *one* factor to be considered in applying the *Feres* doctrine. The *Johansen, Patterson* and *Demko* cases, and many cases in the *Feres* line itself, represent a refusal to relax sovereign immunity through the F. T.C.A. where there is a complete and fair system of compensation, regardless of disciplinary considerations.

Moreover, plaintiff's assertions about the minimal importance of discipline in the P.H.S. are invalid. The P.H.S. is designated a "uniformed service" and is organized along military lines with each officer having a statutory military rank.[1] Regulations provide, among other things: that orders of superior officers must be obeyed, and that failure to obey an order can result in disciplinary action,[2] that absence without leave is grounds for disciplinary action,[3] that summary punishment may be meted out,[4] and that boards of investigation may be established.[5] The system is sim-

---

1. *See* 42 U.S.C. § 201(p) and 42 U.S.C. § 207.

2. 42 C.F.R. §§ 21.262, 21.269(a).

3. 42 C.F.R. § 21.269(1).
   Other grounds for disciplinary action under section 21.269 include: negligence or carelessness in obeying orders, conduct tending

to bring discredit upon the officer or upon the Service, or upon both, and use of language disrespectful of official superiors or other officers.

4. 42 C.F.R. § 21.270.

5. 42 C.F.R. §§ 21.281 *et seq.*

**104**

ilar to the Uniform Code of Military Justice except there is no provision for imprisonment. It is provided by statute, that in times of war or emergency the President may transform the P.H.S. into a regular branch of the armed services, subject to the Uniform Code of Military Justice.[6]

The existence of a quasi-martial discipline in the P.H.S. is dramatically evidenced in this case where the various orders and assignments and the "military atmosphere" of the P.H.S. were, it would seem, a significant factor in Dr. Bumberg's breakdown and subsequent suicide.

As the Court of Appeals in *Alexander* stated:

> We are convinced that the relevant conditions of service in the Public Health Service are very similar to those in the armed forces and demonstrate an equally special relationship and need for discipline. 600 F.2d at 4.

■ The claims against Drs. Blade and Clay fall with the action against the Government. The cases are clear that the same policy judgment made in *Feres* barring suits against the Government under the F.T.C.A. also bars common law actions based on diversity against government personnel in their individual capacities. *Bailey v. DeQuevedo*, 375 F.2d 72 (3rd Cir. 1967); *Bailey v. Van Buskirk*, 345 F.2d 298 (9th Cir. 1965), *cert. denied*, 383 U.S. 948, 86 S.Ct. 1205, 16 L.Ed.2d 210 (1966). *See Kennedy v. Maginnis*, 393 F.Supp. 310 (D.Mass. 1975) and cases cited.

■ The statutory provisions for indemnification of officers of the P.H.S. and their survivors constitute the exclusive mode of recovery for P.H.S. personnel with service-connected injuries. Plaintiff's complaint is, therefore, DISMISSED.