

# The Attorney General of Texas

October 22, 1985

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Lloyd Criss
Chairman
Committee on Labor and
   Employment Relations
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No. JM-367

Re:  Residency status of a student
whose parent is assigned out of
state by the United States Public
Health Service

Dear Representative Criss:

You advise us that a commissioned officer of the United States
Public Health Service has contacted you for clarification by this
office of the Texas residency requirements for purposes of resident
tuition at state institutions of higher education. The Public Health
Service officer has been assigned to duty in Maryland since 1982. We
understand that both before and after her entry into the Public Health
Service, and until 1982, the officer had resided for many years in
Galveston, Texas. A state university has classified the officer's
daughter as a nonresident student for tuition purposes.

The Texas Education Code makes a distinction between residents
and nonresidents of the state in prescribing the rates of tuition for
students registering at the state's institutions of higher education.
Educ. Code §54.051. The code specifies that for tuition purposes
"residence" means "domicile." Id. §54.052(a). An individual who is a
dependent and whose family is domiciled in another state is classified
as a nonresident student. Id. §54.052(c). The issue in question is
whether Texas is the domicile of the Public Health Service officer who
was assigned to duty in Maryland in 1982 and involves fact questions
which we cannot categorically answer in the opinion process. We
conclude, however, that for tuition purposes a Public Health Service
officer does not lose a domicile or acquire a new domicile solely by
reason of the fact that the officer is involuntarily transferred to or
stationed in line of duty in a place outside of Texas.

Section 54.053 of the Education Code provides that each institu-
tion required to charge a nonresident tuition fee is subject to the
rules, regulations, and interpretations issued by the Coordinating
Board, Texas College and University System, for the administration of
the code's nonresident tuition provisions. The Coordinating Board's

rules and regulations for determining residence status, pursuant to Title 3 of the Texas Education Code, provide the following:

(d) Legal residence of person in military service. A person in military service is presumed to maintain during his or her entire period of active service the same legal residence which was in effect at the time of entering military service. A person stationed in a state on military service is presumed not to establish a legal residence in that state because his or her presence is not voluntary but under military orders. It is possible for a member of the military service to abandon the domicile of original entry into the service and to select another, but to show establishment of a new domicile during the term of active service, there must be clear and unequivocal proof of such intent. An extended period of service alone is not sufficient. The purchase of residential property is not conclusive evidence unless coupled with other facts indicating an intent to put down roots in the community and to reside there after termination of military service. Evidence which will be considered in determining this requisite intent includes, but is not limited to a substantial investment in a residence and the claiming of a homestead exemption thereon, registration to vote, and voting in local elections, registration of an automobile in Texas and payment of personal property taxes thereon, obtaining a Texas driver's license, maintaining checking accounts, savings accounts, and safety deposit boxes in Texas banks, existence of wills or other legal documents indicating residence in Texas, change of home-of-record and designation of Texas as the place of legal residence for income tax purposes on military personnel records, business transactions or activities not normally engaged in by military personnel, membership in professional or other state organizations, and marriage to a resident of Texas. Purchase of property during terminal years of military service preceding retirement generally is given greater weight than a similar purchase made prior to such terminal period.

19 T.A.C. §21.24(d).

Unlike the right which is expressly created by statute that permits certain military personnel and their dependents who are classified as nonresidents to pay resident tuition at Texas universities, the presumption of legal residence and domicile of a person in military service, as stated in the above rules and regulations, has been developed by the courts. Section 54.058(b) of the Education Code expressly authorizes the payment of resident tuition by officers and enlisted personnel of the Army, Army Reserve, Army National Guard, Air National Guard, Texas State Guard, Air Force, Air Force Reserve, Navy, Navy Reserve, Marine Corps, Marine Corps Reserve, Coast Guard, or Coast Guard Reserve, assigned to duty in Texas, and their spouses and children, without regard to the length of time that they have been assigned to duty or resided within the state. It is well settled that the express enumeration of a particular thing in a statute is tantamount to an express exclusion of all others. Ex parte McIver, 586 S.W.2d 851, 856 (Tex. Crim. App. 1979); Peterson v. Calvert, 473 S.W.2d 314, 317 (Tex. Civ. App. - Austin 1971, writ ref'd); Carp v. Texas State Board of Examiners in Optometry, 401 S.W.2d 639, 642 (Tex. Civ. App. - Dallas 1966), aff'd 412 S.W.2d 307 (Tex. 1967). Cf. Attorney General Opinion V-1502 (1952). While an officer in the United States Public Health Service is excluded from the statutory right to pay resident tuition granted by section 54.058(b), we believe that exclusion under that statute does not determine the question before us.

The Texas statute defines "residence" as "domicile," but the manner of determining domicile is not specified by statute, and we must rely on judicial construction. Except where specified by statute, the courts have developed the concept of "domicile" for various purposes. In Pecos & N.T. Ry. Co. v. Thompson, 167 S.W. 801, 803 (Tex. 1914), the Texas Supreme Court defined domicile in the following language:

> 'Residence' means living in a particular locality, but 'domicile' means living in that locality with the intent to make it a fixed and permanent home. Residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place, and also an intention to make it one's domicile.

The Texas Supreme Court also has stated that "volition, intention, and action are all elements to be considered in determining . . . permanent residence or domicile." Mills v. Bartlett, 377 S.W.2d 636, 637 (Tex. 1964). Although it largely depends on the present intention of the individual, domicile is not determined by intention alone. See Owens v. Stovall, 64 S.W.2d 360, 362 (Tex. Civ. App. - Waco 1933, writ ref'd). The concurring opinion in Stifel v. Hopkins, 477 F.2d 1116, 1127 (6th Cir. 1973), states that "[t]he two fundamental

considerations in establishing domicile for purposes of state citizenship are residence in the state and intention to remain there permanently."

As reflected by the Coordinating Board's rules and regulations for determining residence status, it has long been established by the courts that persons in military service are presumed to maintain during their entire period of active service the same legal residence that was in effect at the time of entering military service. In Gallagher v. Gallagher, 214 S.W. 516, 518 (Tex. Civ. App. - San Antonio 1919, no writ), the court stated:

> Ordinarily, it is a presumption of law that where a person actually lives is his domicile, such presumption of course being rebuttable; but no such presumption could arise in the case of a soldier in active service, who has no choice of domicile, but must ordinarily cling to his domicile of origin. Ordinarily, an act of removal to a certain location, coupled with the intent to make a permanent residence there, might be sufficient to fix a domicile, but that is because the removal is voluntarily made, which could not occur in the case of a soldier in active service.

The Texas Supreme Court, in Commercial Credit Corporation v. Smith, 187 S.W.2d 363, 366 (Tex. 1945), reiterated that presumption:

> A soldier or sailor does not acquire a new domicile merely from being stationed at a particular place in line of duty. His domicile remains the same as that which he had when he entered the service, unless he shows a change by proof of clear and unequivocal intention.

See also Stifel v. Hopkins, supra; Kinsel v. Pickens, 25 F.Supp. 455, 456 (W.D. Tex. 1938) and Texas cases cited therein; Wilson v. Wilson, 189 S.W.2d 212 (Tex. Civ. App. - Fort Worth 1945, no writ).

Attorney General Opinion S-95 (1953) discusses residency requirements for resident tuition in Texas. In that opinion, this office stated:

> In the absence of a clear intent to abandon his domicile in the state from whence he came and to establish a new domicile in the state in which he serves, a person in the military service does not acquire a domicile in the latter state.

See also Attorney General Opinion O-1459 (quoting from Conference Opinion No. 2977, dated January 10, 1936, Attorney General's Reports 1934-1936, at 114, directed to Dr. H.Y. Benedict concerning residency requirements for army officers for tuition purposes). Conference Opinion No. 2977 expressed the opinion that unless an army officer had some reason to change his domicile, which would have to be coupled with both facts and intention, his domicile would be that of his legal residence at the time he entered the army.

We are not aware of any case in which the court dealt expressly with the issue of the domicile of a Public Health Service officer while serving on assigned duty outside the state of the officer's domicile on original entry into the Public Health Service. It is our opinion, however, that a court would find that the same presumption of legal residence and domicile which applies to persons in military service also applies to officers of the Public Health Service.

Ordinarily, the United States Public Health Service is a civilian service in the Department of Health and Human Services. It is, however, part of the armed forces of the United States and a military service when incorporated into the armed forces by executive order of the President in time of war or an emergency proclaimed by the President. 42 U.S.C. §217. With respect to active service performed by commissioned officers of the Public Health Service in time of war, while on detail for duty with the Army, Navy, Air Force, Marine Corps, or Coast Guard, or while the Service is part of the military forces of the United States pursuant to executive order of the President, Public Health Service officers are entitled to many of the rights and privileges provided by federal law for commissioned officers of the Army. 42 U.S.C. §213(a). Public Health Service officers detailed for duty with the Army, Air Force, Navy, or Coast Guard are subject to the laws for the government of the service to which they are detailed. 42 U.S.C. §215(a). The President prescribes regulations with respect to the appointment, promotion, retirement, termination of commission, titles, pay, uniforms, allowances, and discipline of the commissioned corps of the Public Health Service. 42 U.S.C. §216(a). Federal statutes expressly consider active service of commissioned officers of the Public Health Service to be active military service for specific purposes. Active service of commissioned officers of the Public Health Service is deemed to be active military service in the armed forces of the United States for the purposes of laws administered by the Veterans' Administration and for purposes of all rights, privileges, immunities, and benefits provided under the Soldiers' & Sailors' Civil Relief Act of 1940. 42 U.S.C. §213(d), (e). See Wanner v. Glen Ellen Corporation, 373 F.Supp. 983 (Vt. 1974). For purposes of the program of military medical benefits provided for members of the uniformed services and their dependents, "uniformed services" expressly means the armed forces and the Commissioned Corps of the National Oceanic & Atmospheric Administration and of the Public

Health Service.   10 U.S.C. §1072(1).   A member of the uniformed services who is on active duty is entitled to medical and dental care in any facility of any uniformed service.   10 U.S.C. §1074(a).

The Eighth Circuit Court of Appeals has stated:

> We are convinced that the relevant conditions of service in the Public Health Service are very similar to those in the armed forces and demonstrate an equally special relationship and need for discipline.
>
> For example, the PHS is designated as one of the 'uniformed services' along with the armed forces and the Commissioned Corps of the Environmental Science Services Administration.   10 U.S.C. §1072 (1970).   The PHS is organized along military lines, each officer grade having a statutorily stated military rank equivalent.   42 U.S.C. §207 (1970).   Regulations specify that failure to follow out orders of superior officers will result in disciplinary action.   42 C.F.R. §§21.261-84 (1973).   In addition, PHS officers are assigned to active duty status and are subject to recall to duty during any period of leave.   42 C.F.R. §§21.88 - 91 (1973).   These similarities to military service illustrate how the concern voiced in [the] Feres [case] regarding the effect of tort suits on discipline and internal structure apply with equal force to the Public Health Service.

Alexander v. United States, 500 F.2d 1, 4 (8th Cir. 1974).   See also, Levin v. United States, 403 F.Supp. 99, 103 (Mass. 1975).   In Levin v. United States, which is a suit against the government for service connected injury to a Public Health Service officer, the federal court stated:

> No less than the military, this uniformed service, specially created by the sovereign, is out of the normal stream of the common law.   The same unfairness would occur in applying 'the law of the place' to P.H.S. officers, who have no more control over their duty stations than military men.

Id. at 103.

For purposes of Texas resident tuition, no state or federal statute expressly determines the domicile of an officer of the Public

Health Service who involuntarily is assigned by the Public Health Service to duty outside of Texas. The court in <u>Levin v. United States</u> concluded that "there is no reasonable way, in law or in logic, to distinguish the position of the Public Health Service officer from that of the military man for purposes of tort suits." <u>Id.</u> It is our opinion that a court also would not distinguish the position of the Public Health Service officer from that of the military officer for purposes of domicile and, if asked, would find that the positions of both create a presumption that such persons, when transferred to and involuntarily assigned to duty in a state, are not presumed to have established a legal residence in the state where their presence is involuntary.

Such a presumption, however, may not be true in fact and is rebuttable by clear and unequivocal proof that the person intended to abandon the domicile of original entry into the service and to select another domicile. <u>See</u> Attorney General Opinion H-559 (1975). Intention is an essential consideration in determining domicile, and the solution to each particular case must depend on all the facts and circumstances which tend to support or to negate an intention to establish or to abandon a domicile. Domicile clearly involves issues of fact, and this office is not equipped to make such factual determinations in its opinion process.

### S U M M A R Y

A court would probably not distinguish the position of a Public Health Service officer from that of a military officer for purposes of domicile but would rather find that the positions of both create a presumption that such persons, when transferred to and involuntarily assigned to duty in a state, are presumed not to establish a legal residence in that state when their presence there is involuntary. The presumption is rebuttable by facts that prove a clear and unequivocal intention to establish a new domicile during active service.

Very truly yours

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Nancy Sutton
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Tony Guillory
Jim Moellinger
Jennifer Riggs
Nancy Sutton
Sarah Woelk