# United States Court of Appeals
## For the First Circuit

No. 07-1607

WILFREDO DIAZ-ROMERO, M.D.; LUZ ARIANA ORTIZ-COLON;
CONJUGAL PARTNERSHIP DIAZ-ORTIZ,

Plaintiffs, Appellants,

v.

MICHAEL B. MUKASEY,[*] Attorney General; RICHARD E. CHAVEZ,
Warden of the Metropolitan Detention Center, Guaynabo, PR;
EDWARD GONZALEZ, Warden, in his official and personal capacities;
NOEMI POTTS, in her official and personal capacities;
DR. OLGA GRAJALES, in her official and personal capacities;
A-Z INSURANCE COMPANIES; JANE DOE; RICHARD ROE,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Raymond L. Acosta, Senior U.S. District Judge]

Before

Torruella and Howard, Circuit Judges,

and Smith,[**] District Judge.

Julio C. Alejandro Serrano, with whom Nicolas Nogueras, Jr.,

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Michael
B. Mukasey has been substituted for former Attorney General
Alberto R. Gonzales.

[**] Of the District of Rhode Island, sitting by designation.

and <u>Nicolas Nogueras Law Office</u> were on brief, for appellants.

   <u>Germán A. Rieckehoff</u>, Assistant United States Attorney, with whom <u>Rosa E. Rodríquez-Vélez</u>, United States Attorney, and <u>Nelson Pérez Sosa</u>, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

------------------------

January 31, 2008

------------------------

**HOWARD**, **Circuit Judge**.  The district court dismissed the complaint of Wilfredo Diaz-Romero for lack of subject matter jurisdiction.  We affirm because Diaz-Romero's status as a commissioned officer of the Public Health Service ("PHS") bars his suit for service connected injuries.

## I.  Facts

Because the complaint was resolved on a motion to dismiss, the facts are set forth as alleged in the complaint and inferences taken in the light most favorable to Diaz-Romero, the non-moving party.  Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 94 (1st Cir. 2007).

Wilfredo Diaz-Romero was a commissioned officer with the PHS, an agency of the Department of Health and Human Services. Like the armed service branches, the PHS is a "uniformed service" of the United States.  42 U.S.C. § 201(p).  While serving with the PHS, Diaz-Romero was assigned to the Federal Bureau of Prisons' ("BOP") Metropolitan Detention Center in Guaynabo, Puerto Rico as "Clinical Director."

The PHS and the BOP have a detailed Memorandum of Understanding ("MOU") in place that governs conditions of employment for PHS officers placed with the BOP.[1]  In particular,

---

[1] The MOU was filed as an exhibit to the government's motion to dismiss.  We are permitted to rely on this document in resolving the jurisdictional question.  See Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002); Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996).

-3-

the MOU establishes both a discipline and evaluation process for commissioned officers of the PHS assigned to the BOP. Diaz-Romero's role within the PHS and his salary were both outside the BOP's control.

During Diaz-Romero's stint with the BOP he was involved in two incidents. First, another BOP employee filed a sexual harassment complaint against him, although an Equal Employment Opportunity Commission investigator later concluded that the complaint was unfounded. Second, he failed to report to management that an inmate greeted him by placing her cheek next to his and "throwing" a kiss to the air.

Following the second incident Diaz-Romero suffered a series of adverse employment actions. A performance evaluation of him was revised downward. He was also suspended, with pay, from his duties as Clinical Director and then demoted to the inferior position of "Medical Officer." Ultimately, both Diaz-Romero's assignment with the BOP and his commission with the PHS were terminated.

These unfavorable employment actions prompted Diaz-Romero, his spouse, and their conjugal partnership, to file this action. The suit named the United States Attorney General and the warden of the Metropolitan Detention Center in their official capacities, as well as several other current and former BOP and PHS employees in both their personal and official capacities.

Diaz-Romero asserted that he was punished for defending against the sexual harassment claim and not because of the incident with the inmate. He brought a bevy of claims, including claims under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671 *et seq.*, alleging that the defendants engaged in a conspiracy to violate his constitutional rights and created a hostile work environment. Specifically, Diaz-Romero claimed the defendants violated the Fourth, Fifth, Ninth, and Fourteenth Amendments and committed torts under article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5191.[2] He sought both compensatory and punitive damages.

In dismissing Diaz-Romero's claims for lack of subject matter jurisdiction, the district court ruled that the FTCA and Bivens claims were barred by the doctrine of Feres v. United States, 340 U.S. 135 (1950), which limits suits for injuries arising "incident to military service." The court noted that, pursuant to 42 U.S.C. § 213(f)[3], Diaz-Romero was, at all times

_____

[2] Although Diaz-Romero also filed claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and 42 U.S.C. §§ 1983, 1985, and 1986, he does not appeal the district court's resolution of those claims.

[3] This statute reads:

> Active service of commissioned officers of the [Public Health] Service shall be deemed to be active military service in the Armed Forces of the United States for purposes of all laws related to discrimination on the

relevant to the complaint, deemed to be in active military service in the Armed Forces. Because Diaz-Romero was in active service in the Armed Forces at the time of his injuries, the court reasoned, the injuries he suffered were "incident to military service" and thus triggered the Feres doctrine's bar.

## II. Discussion

Diaz-Romero appeals the district court's dismissal of his FTCA[4] and Bivens claims, contending that the court erroneously relied on the Feres doctrine. We review a dismissal for lack of subject matter jurisdiction pursuant to the Feres doctrine de novo. See Day v. Mass. Air Nat'l Guard, 167 F.3d 678, 681 (1st Cir. 1999).

### A.  FTCA claims

The United States has consented, in the FTCA, to be sued for damages for personal injury caused by "the negligent or

---

basis of race, color, sex, ethnicity, age, religion, and disability.

[4] Diaz-Romero identifies three torts under Puerto Rico law that underlie his FTCA claims: (1) abuse of process; (2) intentional infliction of emotional distress; and (3) hostile workplace environment. Although the district court did not examine his tort claims in any detail, and instead dismissed the case on jurisdictional grounds, we note that Diaz-Romero only alleges one tort claim that we conclude is clearly colorable under the FTCA and Puerto Rico law - intentional infliction of emotional distress. The tort of abuse of process is specifically excepted from the FTCA. See 28 U.S.C. § 2680(h). Moreover, although Diaz-Romero asserts that Puerto Rico law recognizes the tort of hostile workplace environment, he fails to provide any case law in support of his contention.

wrongful act or omission" of a federal employee "while acting within the scope of his employment," if under the same circumstances a private employer would be liable for the acts of his employee under the local law. 28 U.S.C. §§ 1346(b), 2674, 2675(a). The <u>Feres</u> doctrine is a judicially crafted exception to the FTCA. See <u>Feres</u>, 340 U.S. at 135; <u>Day</u> 167 F.3d at 681. It bars military service members from bringing FTCA suits against the United States for injuries that "arise out of or are in the course of activity incident to service." See <u>Feres</u>, 340 U.S. at 146. Courts have identified a number of justifications for the doctrine. One of the most often cited justifications is that, absent the <u>Feres</u> doctrine, the judiciary would become ensnared in "sensitive military affairs at the expense of military discipline and effectiveness." See <u>United States</u> v. <u>Johnson</u>, 481 U.S. 681, 690 (1987)(quoting <u>United States</u> v. <u>Shearer</u>, 473 U.S. 52, 59 (1985)); <u>see</u> <u>also</u> <u>Day</u> 167 F.3d at 682 (noting the Supreme Court's emphasis on the doctrine's purpose of avoiding undue judicial interference in military discipline and "grievance matters").

Although we have not previously explicitly held that the <u>Feres</u> doctrine applies to commissioned officers in the PHS, Diaz-Romero does not contest the doctrine's general applicability to members of the PHS. We conclude that <u>Feres</u> applies to the PHS. The similarities and relation between the armed service branches and the PHS merit the <u>Feres</u> doctrine's extension to health service

-7-

officers.  The PHS is, along with the armed service branches, designated as a uniformed service of the United States.  42 U.S.C. § 201(p).  It is organized along military lines, each commissioned officer grade having a statutorily stated military rank equivalent. 42 U.S.C. § 207.  Commissioned officers of the PHS, or their surviving beneficiaries, are entitled to many of the same statutory rights, benefits, privileges, and immunities provided to commissioned officers of the United States Army or their surviving beneficiaries, 42 U.S.C. § 213a(a), and PHS regulations specify that failure to follow the orders of superior officers will result in disciplinary action.  Commissioned Corps Personnel Manual, Chapter CC46, Subchapter CC46.4.  Importantly, in times of war or emergency the President may transform the PHS into a regular branch of the armed services, subject to the Uniform Code of Military Justice.  42 U.S.C. § 217.  It is not surprising then, that other circuits considering this question have concluded that the Feres doctrine applies to commissioned officers in the PHS.  See Scheppan v. United States, 810 F.2d 461, 463 (4th Cir. 1987); Alexander v. United States, 500 F.2d 1, 4 (8th Cir. 1974); see also Levin v. United States, 403 F. Supp. 99, 103 (D. Mass. 1975)("There is no reasonable way, in law or logic, to distinguish the position of the PHS officer from that of the military man, for purposes of tort suits.").  We join the other circuits.

Even though the <u>Feres</u> doctrine applies to Diaz-Romero as a health officer, there is an additional question that must be answered in order to determine whether the doctrine bars his tort claims. That question is whether the injuries he suffered were "incident to service." As we have noted, determining whether an injury was incident to service involves

> asking whether it occurred on a military facility, whether it arose out of military activities or at least military life, whether the alleged perpetrators were superiors or at least acting in cooperation with the military, and--often stressed as particularly important, whether the injured party was himself in some fashion on military service at the time of the incident. No single element in the equation, the Supreme Court has said, is decisive.

<u>Day</u>, 167 F.3d at 682 (internal citation omitted).

Here, the incidents that are alleged to have caused Diaz-Romero's injuries occurred while Diaz-Romero was actively serving in his PHS assigned post with the BOP. Specifically, Diaz-Romero claims that supervisors injured him by applying BOP regulations against him. See <u>Chatman</u> v. <u>Hernandez</u>, 805 F.2d 453, 457 (1st Cir. 1986) (concluding injury was incident to service because, among other things, "[a]t the time of alleged wrongs in this case, appellant was in fact a serviceman on active duty."); <u>see</u> <u>also</u> <u>Levin</u>, 403 F. Supp. at 103 (noting plaintiff's injuries were "clearly 'service connected'" where harassment on job caused plaintiff, a commissioned officer in the PHS, to commit suicide). Moreover, the alleged perpetrators in this case, Diaz-Romero's

supervisors at the BOP, were acting in cooperation with the PHS, in that the PHS placed Diaz-Romero with the BOP and that the BOP's control over Diaz-Romero was subject to the MOU between the PHS and the BOP.

Diaz-Romero argues that his injuries were not incident to service because his service with the BOP was not like military service. He notes that the BOP is guided by civilian objectives and principles and that the defendants did not act pursuant to military commands. Consequently, his thesis runs, one of the Feres doctrine's primary purposes, preventing judicial involvement in sensitive military affairs at the expense of military discipline and effectiveness, would not be served by barring his lawsuit.

This argument is more properly aimed at the invocation of Feres in the first place rather than the application of Feres's "incident to service" test to the injuries alleged, and we have already determined that the Feres doctrine applies to commissioned officers of the PHS. Put simply, the largely fact-specific "incident to service" test is not amenable to Diaz-Romero's argument.

Moreover, the specific point of his argument -- that applying the Feres doctrine to bar his lawsuit would not serve the purposes of the doctrine -- also misses the mark. As we noted earlier, one of the purposes of the Feres doctrine is to prevent the judiciary from becoming embroiled in sensitive military affairs

at the expense of military discipline and effectiveness. Because of the similarities between the PHS and other armed service branches, courts have noted that barring tort suits by commissioned officers of the PHS for service-related injuries serves this same purpose. See Alexander, 500 F.2d at 4 ("[The similarities] to military service illustrate how the concern voiced in Feres regarding the effect of tort suits on discipline and internal structure appl[ies] with equal force to the Public Health Service."); see also Levin, 403 F. Supp. at 103 (rejecting as "invalid" plaintiff's assertion that disciplinary concerns were of minimal importance in the PHS).

It is not difficult to see how the discipline and effectiveness purpose of the Feres doctrine is served by barring Diaz-Romero's action. Diaz-Romero claims that he suffered a number of injuries while serving with the BOP. These injuries include: (1) a demotion from Clinical Director to Medical Officer; (2) eventual termination of his commission; and (3) injuries stemming from the BOP's evaluation process. He claims that the defendants' application of BOP regulations caused his injuries.

Forming an intrinsic part of these regulations is the MOU between the BOP and the PHS. In the MOU, the PHS and the BOP created an internal structure to deal with disciplinary actions taken against PHS officers and the BOP's evaluation of PHS officers. For example: (1) The PHS must exercise professional

oversight of PHS commissioned officers assigned to the BOP; (2) the BOP is tasked with advising the PHS of disciplinary actions taken against PHS commissioned officers; (3) the PHS is ultimately responsible for actions taken against PHS commissioned officers with respect to substandard performance or misconduct; and (4) all evaluations of PHS officers must be completed in accordance with PHS procedures. Unquestionably, Diaz-Romero's lawsuit would require judicial inquiry into the disciplinary scheme and evaluation procedures set forth in the MOU. Such an inquiry would frustrate the Feres doctrine's purpose of avoiding interference with disciplinary schemes implemented by the uniformed services, in this case those of the PHS.

## B. **Bivens** claims

In addition to his claims under the FTCA, Diaz-Romero sued his federal supervisors under Bivens in both their official and individual capacities. These claims require only the briefest treatment. The Feres doctrine applies with equal force to bar Bivens suits if the suits are based on injuries that "arise out of or are in the course of activity incident to service." See Wright v. Park, 5 F.3d 586, 590 (1st Cir. 1993) (noting Supreme Court's decision in United States v. Stanley, 483 U.S. 669 (1987) "makes pellucid that the exception to Bivens liability . . . is coextensive with the exception to tort liability established by Feres and its progeny"). We have already concluded that Feres bars

Diaz-Romero's FTCA claims; it necessarily follows that his <u>Bivens</u> claims, based on the same events that gave rise to his FTCA claims, are barred as well.

**Affirmed.**