**IT IS HEREBY ORDERED** that plaintiff's motion to remand is **GRANTED.** [Doc. 6–2]

**IT IS FURTHER ORDERED** that plaintiff's motion to dismiss the petition for removal is **DENIED as moot.** [Doc. 6–1]

**IT IS FINALLY ORDERED** that this matter is **REMANDED** to the Circuit Court of the City of St. Louis, Missouri.

**Robert J. TOBIN, Plaintiff,**

v.

**Isaac V. PRYCE, Michael B. Nelson, Bryan L. Saucerman, Keith P. Heithoff, Dean A. Mason, Chad R. Stevens, Marc A. Tatro, and Mark A. Stockstell, Defendants.**

**No. 4:97CV3027.**

United States District Court, D. Nebraska.

Nov. 4, 1997.

Peter C. Wegman & Timothy L. Moll, Rembolt Ludtke & Berger, Lincoln, NE, for Plaintiff.

Thomas J. Monaghan, U.S. Atty., Paul D. Boeshart, Asst. U.S. Atty., Lincoln, NE, for Defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Plaintiff, a former member of the Nebraska Army National Guard (NANG), brings this *Bivens*[1] action alleging that Defendants, officers in the NANG, engaged in acts of religious discrimination against Plaintiff which deprived Plaintiff of his constitutional rights to free exercise of religion and equal protection. Plaintiff alleges that as a result of such discrimination, he was forced to resign from the NANG, forfeit future wages and pension benefits, and suffer emotional pain. Plaintiff seeks compensatory and punitive damages. (Filing 32, Amended Complaint.)

Pending before the court are Defendants' motion to dismiss and alternative motion for summary judgment (filing 33) in which Defendants argue for dismissal of Plaintiff's complaint because (1) the complaint does not meet a heightened pleading standard, and (2) Plaintiff's action is barred by the "intra military immunity doctrine." (Defs.' Br.Supp.Renewed Mot. Dismiss or Mot. Summ. J. at 2.) Because I conclude that this action is barred as being nonjusticiable under the *Feres*[2] doctrine, I shall dismiss this case on that basis.

## I. STANDARD OF REVIEW

Defendants' motion to dismiss is brought pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) (filing 33), and both Plaintiff and Defendants have submitted affidavits in connection with this motion (filings 28, 36).

Fed.R.Civ.P. 12(b) provides in part:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Because Defendants' motion to dismiss is partly based on Fed.R.Civ.P. 12(b)(6) and the parties have both submitted matters outside the motion which will be relied upon by the court, Defendants' motion to dismiss (filing 33) shall be treated as a motion for summary judgment.

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir.), *cert. denied*, 513 U.S. 929, 115 S.Ct. 319, 130 L.Ed.2d 280 (1994).

In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652–53 (8th Cir.1997).

## II. FACTS

As established by the affidavits submitted by the parties and the pleadings on file, the undisputed material facts are these:

1. Plaintiff Robert J. Tobin was an officer of the Nebraska Army National Guard (NANG) during March 1995. (Filing 36, Aff. Robert J. Tobin ¶ 2; Filing 28, Decl. Major General Stanley M. Heng 7.)

2. All defendants were also members of the NANG during March 1995, and each held a military rank higher than Plaintiff. (Filing 36, Aff. Robert J. Tobin ¶ 3; Filing 28, Decl. Major General Stanley M. Heng ¶ 7.)

---

**1.** *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (violation of one's constitutional rights can give rise to a damages action against an offending federal official, even in the absence of statutory authorization for such relief).

**2.** *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

3. From March 5, 1995, through March 26, 1995, Plaintiff and Defendants were ordered to federal active duty with the United States Army by order of the Secretary of the Army, in accordance with Title 10 of the United States Code. (Filing 28, Decl. Major General Stanley M. Heng ¶ 6.)

4. During this period, Plaintiff, Defendants, and several other members of the NANG were sent to Germany to participate in Overseas Deployment Training. (Filing 28, Decl. Major General Stanley M. Heng ¶ 6.) Being in Overseas Deployment Training status required Plaintiff and Defendants to be available every day for duty for the full two-week period they were in Germany. (Filing 28, Decl. Colonel James H. Rowan at 1.)

5. The United States Army encourages officers to develop themselves both professionally and personally. Formal professional development can consist of attending military or civilian institutions of higher learning. Informal professional development consists of studying military history or participating in staff rides to battle sites or other sites of historical significance. (Filing 28, Decl. Colonel James H. Rowan at 1–2.)

6. In light of the Army's professional development policy, Colonel James H. Rowan—who was Director of Operations and Training in Grafenwoehr, Germany, during March 1995—authorized the visiting officers' staff supervisors to allow the visiting officers, including Plaintiff and Defendants, to take advantage of the development opportunities in Germany. Specifically, Colonel Rowan authorized Plaintiff and Defendants to travel to the Dachau Concentration Camp on or about March 12, 1995, "for officer professional development, despite their limited tours and full work schedule." (Filing 28, Decl. Colonel James H. Rowan at 1–2; Filing 36, Aff. Robert J. Tobin ¶ 5.)

7. The tour of Dachau was "authorized and arranged" by Defendants and other members of the NANG; Plaintiff and Defendants were not in uniform during the trip; Plaintiff and Defendants paid for van transportation to Dachau with personal funds and were not subsequently reimbursed by the NANG or any other branch of the military;

Plaintiff paid for his meals with personal funds during the Dachau trip and was not reimbursed by any branch of the military; and Plaintiff and Defendants were "not asked to and did not participate in any formal or informal training during the trip to Dachau." (Filing 36, Aff. Robert J. Tobin ¶¶ 6–10.)

8. Plaintiff alleges in his complaint, and it is not disputed by Defendants, that Plaintiff is a member of the Jewish faith and had adopted the tenets of Judaism as his sincerely held religious beliefs at all times relevant to this action. Plaintiff further alleges that during March 1995, Defendants subjected Plaintiff to "frequent derogatory remarks and actions based on Plaintiff's religious preference and heritage," including the following two incidents:

a. On or about March 12, 1995, while on active duty training in Germany, Tobin accompanied Defendants on a tour of the Dachau extermination camp. En route to the camp, Defendant Mason presented Tobin with a pair of shower shoes.

All of the other Defendants were aware of and/or participated in the "presentation," which was an obvious reference to the means by which Jews were killed during the Holocaust.

b. On or about March 12, 1995, upon the group's arrival at Dachau, Defendant Heithoff made threatening and derogatory statements to Tobin to the effect Heithoff wanted to see Tobin cremated and gassed and inquiring where the ashes of Tobin's ancestors were so that he could be sure to put his cigarette out there.

(Filing 32, Amended Complaint ¶¶ 7–8.)

9. On July 17, 1995, Plaintiff submitted a letter to the Adjutant General for the NANG, Major General Stanley M. Heng, requesting an immediate discharge from the NANG and a transfer to the Individual Ready Reserve of the Armed Forces as a result of alleged religious discrimination, including the above-described incidents. Major General Heng deferred taking action on Plaintiff's request and ordered an official military investigation of Plaintiff's allegations. (Filing 28, Decl. Major General Stanley M. Heng ¶¶ 2–3.)

10. As a result of the investigation ordered by Major General Heng, "appropriate disciplinary action was taken." (Filing 28, Decl. Major General Stanley M. Heng ¶ 5.)

11. Plaintiff alleges that he has resigned from the NANG. (Filing 32, Amended Complaint ¶ 13.)

## III. LAW

### A. Supreme Court

In *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court considered three cases brought under the Federal Tort Claims Act in which military personnel, while on active duty and not on furlough, were injured due to the negligence of other members of the armed forces. Two of the cases involved medical malpractice by Army surgeons, and the other case involved a member of the military who died in a barracks fire.

Reasoning that in drafting the Federal Tort Claims Act, Congress did not intend to create a new cause of action dependent upon local law for service-connected injuries or death due to negligence, and that the relationship between military personnel and the government historically has been governed exclusively by federal law, the *Feres* Court held that the government "is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159.

Using *Feres* to guide its analysis, the Supreme Court in *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), considered a case in which five enlisted men serving in the United States Navy sought to maintain a *Bivens* action against their superiors for failing to assign plaintiffs to desirable duties, threatening plaintiffs, giving plaintiffs low performance evaluations, and imposing unusually severe penalties because of the plaintiffs' minority race.

The *Chappell* Court noted that the Court in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics ,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), cautioned that suits for damages against federal officials whose actions violated an individual's constitutional rights may not be available when " 'special factors counselling hesitation' " are present, and that such "special factors" formed the basis of the Court's *Feres* decision. *Chappell,* 462 U.S. 296, 298, 103 S.Ct. 2362, 2364–65, 76 L.Ed.2d 586 (1983) (quoting *Bivens,* 403 U.S. at 396, 91 S.Ct. at 2004–05). The court broadly held that "enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations" because of the following "special factors" which made a *Bivens*-type remedy inappropriate in that context: (1) the unique disciplinary structure of the military formed by the hierarchial and obedient relationship between soldiers and their superiors that is imperative in combat and that would be destroyed if the judiciary created a remedy exposing officers to personal liability for actions taken against those they are charged to command; and (2) the fact that Congress has not provided a damages remedy for constitutional claims by military personnel against their superior officers when Congress is the constitutionally authorized source of authority over the military system of justice. *Chappell,* 462 U.S. at 300–305, 103 S.Ct. at 2365–68.

In *United States v. Stanley,* 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987), the Supreme Court considered a lawsuit brought under the Federal Tort Claims Act and *Bivens* after the plaintiff, a former master sergeant in the Army, was given LSD without his knowledge pursuant to an Army plan to study the effects of the drug on humans under the guise of a program designed to test the effectiveness of protective clothing and equipment. The Supreme Court *in Stanley* found that the Court of Appeals construed *Chappell* too narrowly when it held that the plaintiff's *Bivens* claim could proceed. The Court clarified that the *Feres* "incident to service" test applied in the *Bivens* context and that the "special factors" discussed in *Chappell* extend beyond situations in which an officer-subordinate relationship exists. Accordingly, the Court held that "no *Bivens* remedy is available for injuries that 'arise out of or are in the course of activity incident to service.' " *Stanley,* 483

U.S. at 684, 107 S.Ct. at 3064 (quoting *Feres*, 340 U.S. at 146, 71 S.Ct. at 159).

### B. Eighth Circuit Court of Appeals

The Eighth Circuit Court of Appeals has defined two "exceptions" to the general rule that *Bivens* claims are nonjusticiable if·they involve injuries arising out of or in the course of activity incident to military service: (1) facial challenges to the constitutionality of military regulations or statutes; and (2) claims seeking limited judicial review of final agency action. *Wood v. United States*, 968 F.2d 738, 739–40 (8th Cir.1992) (citing *Watson v. Arkansas Nat'l Guard*, 886 F.2d 1004 (8th Cir.1989)).

When the issue is not one involving the above exceptions, but one of analyzing whether a given activity is incident to military service, the Eighth Circuit Court of Appeals has set forth several factors that are to serve as "guidelines for determining whether the policy rationales of *Feres* will be fulfilled by the application of the doctrine in the individual case." *Brown v. United States*, 739 F.2d 362, 366 (8th Cir.1984), *cert. denied*, 473 U.S. 904, 105 S.Ct. 3524, 87 L.Ed.2d 650 (1985). These factors may be summarized as follows:

A. Was there a relevant relationship between the service member's activity and the military service?

   1. What was the duty status of the service member at the time of injury?

   2. Location of injury; did the injury occur on a military base?

   3. Nature of activity at the time of injury; was the activity out of which the action arose serving some military purpose or mission?

B. Would military discipline be impeded if the challenged conduct is litigated in a civil action?

*Brown*, 739 F.2d at 367–69.

In *Brown*, the court analyzed these factors in the context of a black National Guardsman's lawsuit against the guardsman's superior officers, the United States, and against fellow guardsmen who participated in a racially motivated "mock lynching" of him while the guardsmen were at a drinking party and were off duty for the Memorial Day weekend. Using the above factors as guides, the court held that while the plaintiff's claims against his superior officers and the United States impinged upon the unique military disciplinary structure, and were therefore barred under the *Feres* doctrine, the plaintiff's claims against his fellow guardsmen could proceed for two reasons: (1) there was no relevant relationship between the plaintiff's activity at the time of the mock lynching and his military service because at the time of the incident the guardsmen were off duty, "free to come and go as they pleased," and the activity itself was not sponsored by the military base or related to any conceivable military mission or purpose; and (2) the plaintiff's claim against the participants in the mock lynching did not involve either the command relationship between a service member and his superiors or military decision making with respect to disciplinary matters. As stated by the court:

> The activity· that is at issue in this claim is of ·a distinctly non-military nature: the alleged participation of a group of men at a holiday weekend drinking party in the mock lynching of a young black man. The primary purpose of the *Feres* doctrine—the maintenance of the military disciplinary structure—could hardly be furthered by the application of military immunity for the participants in this incident. Indeed, the application of the *Feres* doctrine in a case such as this would insulate from liability the very breakdown of military discipline. Thus, the defendants who participated in the hanging incident are not entitled to a dismissal of this lawsuit under the *Feres* doctrine.

*Brown*, 739 F.2d at 369.

In *Miller v. United States*, 643 F.2d 481 (8th Cir.1980), various judges of the court sitting *en banc* disagreed about whether a wrongful death lawsuit filed by the executors of a deceased Army private could proceed under the *Feres* doctrine when at the time of the accident the private was performing part-time work on the military base for a private contractor. However, the majority and dissenting judges agreed—either by citation to

cases or direct language—that a soldier injured during personal recreation on base while not formally on duty cannot recover against the United States for negligence. *Miller*, 643 F.2d at 492 (majority opinion on rehearing *en banc* ) & 497 (Heaney, Ross & McMillian, JJ., dissenting). As stated by the dissenting judges:

> The military is responsible for providing recreational, cultural and athletic activities to promote the morale and health of service personnel. Injuries incurred in the course of such activities, ' which have prompted many of the *Feres* line of cases, are clearly "incident to service."

*Id.* at 497 (Heaney, Ross & McMillian, JJ., dissenting). *See also Chambers v. United States*, 357 F.2d 224, 229 (8th Cir.1966) (under *Feres*, plaintiffs failed to state negligence action against United States for death of enlisted man in United States Air Force which occurred while airman was swimming in base pool because airman's privilege to use pool was related to and dependent upon his military service; airman was subject to control of military superiors and assigned to duty at the base, but recovery would have been barred even if airman had furlough order or was swimming for recreation).

The *Miller* majority made it clear that the *Feres* doctrine is to be construed broadly, and that its rule is "not limited to cases of negligent orders given or negligent acts committed in the course of actual military duty." *Miller*, 643 F.2d at 492.

## IV. ANALYSIS

In the case now pending before the court, the issue is whether Plaintiff's alleged injuries arose out of, or were in the course of, activity incident to service. *United States v. Stanley*, 483 U.S. 669, 684, 107 S.Ct. 3054, 3064, 97 L.Ed.2d 550 (1987); *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950) [3]. In determining whether the policy rationale of the *Feres* doctrine will be fulfilled by applying the doctrine in this case, I must analyze (1) whether there was a relevant relationship between Plaintiff's activity at the time of injury and

his military service, and (2) whether military discipline would be impeded if Defendants' conduct is litigated in this action. *Brown v. United States*, 739 F.2d 362, 366 (8th Cir. 1984), *cert. denied*, 473 U.S. 904, 105 S.Ct. 3524, 87 L.Ed.2d 650 (1985).

### A. Relationship Between Plaintiff's Activity and Military Service

The undisputed facts in this case establish that Plaintiff and Defendants were on federal active duty with the United States Army at the time the incidents at issue occurred. Specifically, Plaintiff and Defendants were required to be available for duty every day during their two-week Overseas Deployment Training in Germany.

The incidents did not occur on a military base, but while Plaintiff and Defendants were traveling to the Dachau Concentration Camp. The trip was arranged by Defendants and other NANG members; the NANG members participating in the trip used their own funds for transportation and meals; and the NANG members did not participate in "formal or informal training during the trip." (Filing 36, Aff. Robert J. Tobin ¶¶ 6–10.) However, the trip was authorized by Colonel James H. Rowan, Director of Operations and Training in Grafenwoehr, Germany, and was viewed by Colonel Rowan as furthering the Army's professional development policy, which involves study of military history and participation in staff visits to battle sites or other sites of historical significance.

This case is much more comparable to the cases holding that injuries incurred in the course of military-provided recreational, cultural, and athletic activities are "incident to service," *Miller*, 643 F.2d at 492 (majority opinion on rehearing *en banc* ) & 497 (Heaney, Ross & McMillian, JJ., dissenting), than it is to *Brown*, in which the plaintiff's fellow guardsmen injured him during a non-military-sanctioned drinking party attended by off-duty military personnel.

Based upon the *Feres* line of cases, as applied by the Eighth Circuit Court of Appeals, and the undisputed facts in this case, I

---

**3.** Plaintiff does not claim that the exceptions noted in *Wood* v. *United States*, 968 F.2d 738,

739–40 (8th Cir.1992), discussed above, apply to this case.

conclude that the activity out of which Plaintiff's injury arose—a National–Guard–authorized visit by NANG members to a site of historical and military significance—was related to Plaintiff's military service, and, as stated by Colonel Rowan, served the military purpose or mission of professional development.

## B. Impeding of Military Discipline

As a result of the incidents at issue here, Major General Stanley M. Heng ordered an official military investigation and imposed "appropriate disciplinary action." (Filing 28, Decl, Major General Stanley M. Heng ¶ 5.) Litigation of this matter in this court would involve reanalyzing the incidents at issue; inquiring into facts gleaned in an official military investigation; and possibly reaching an outcome which could vindicate Defendants as to Plaintiff's constitutional claims, thereby undermining the impact and wisdom of the military discipline which has already been imposed upon Defendants as a result of the incidents at issue.

Therefore, I conclude that litigation of Plaintiff's claims in this court could affect the military disciplinary process.

## V. CONCLUSION

Because there was a relevant relationship between Plaintiff's military service and his activity at the time his constitutional rights were allegedly violated, and because litigation of Plaintiff's claims in this court could affect the military disciplinary process, I conclude that Plaintiff's alleged injuries arose out of, or were in the course of, activity incident to service, and that Plaintiff's claims related to such injuries are therefore barred under the *Feres* doctrine. *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Accordingly, I shall grant Defendants' motion for summary judgment (filing 33).

IT IS ORDERED:

1. Defendants' motion for summary judgment (filing 33) is granted;

2. This case is dismissed with prejudice; and

3. Judgment shall be entered by separate document.